[Civ. No. 4653. Fourth Dist. Mar. 17, 1954.]

THOMPSON CRANE AND TRUCKING COMPANY et al., Plaintiffs, v. HERMAN L. EYMAN, Appellant; CARL W. WELLER et al., Respondents.

Adams, Duque, Davis & Hazeltine, Docker & Docker, James S. Cline and Lawrence T. Lydick for Appellant.

Thompson & Thompson and Harold V. Thompson for Respondents.

BARNARD, P. J.—This action was commenced as one in interpleader. The plaintiff alleged that the defendants Eyman and Weller claimed adverse interests in the proceeds of a note given by plaintiff to Weller, and assigned by him to Eyman. By appropriate pleadings Weller and Eyman each claimed the money, Eyman relying on an assignment of the note and a claimed breach of contract and Weller claiming that the contract had been obtained through compulsion and duress. The money due on the note was deposited in court, it was stipulated that the plaintiff should have its judgment of interpleader, and the action was tried on the issues as

to the respective rights of Weller and Eyman to the funds deposited.

Weller, who was in business in Coalinga, filed income tax returns for 1943, 1944 and 1945 upon a cash basis. In 1945, nearly all of his records were destroyed by fire. In 1946, he employed Eyman, a certified public accountant, to install a system of bookkeeping and to prepare his income tax return for 1946. While doing this Eyman examined Weller's returns for 1943 to 1945, and then filed the 1946 return upon an accrual basis without obtaining permission to change the basis of reporting. On Eyman's recommendation Weller also filed amended returns for 1943 to 1945, claiming a refund of $4,800. Eyman was paid for his work up to that time.

As a result of filing this claim of refund a large additional assessment against Weller was proposed by the treasury department. In 1948, Weller conferred with Eyman about handling this matter since he was familiar with the basis of the amended returns and claim of refund. Eyman told Weller the proposed assessment was asinine, and it was a simple matter to wind up. On April 14, 1949, they entered into an oral agreement by which Eyman agreed to handle the matter and Weller agreed to pay him a retainer of $1,000, and paid $250 on account thereof. Nothing was said in that conversation about a contingent fee, and Eyman later wrote Weller a series of letters repeatedly mentioning the $1,000 retainer but saying nothing of any contingency.

In July, 1950, the treasury department sent Weller formal notice of additional assessments amounting to about $118,000. These notices were delivered to Eyman who applied for a 60-day extension in which to file a protest, saying he had only eight days which was not sufficient. His request for 60 days was refused but he was given 30 days, extending the time to Monday, September 18. On September 15, Weller received a telegram from the treasury department stating that September 18 was the deadline. Eyman prepared the protest, completing it on Saturday morning, September 16. On the afternoon of September 16, in response to Eyman's request, Weller went to Eyman's office in Los Angeles to sign the protest. Eyman told Weller that he had completed the protest and that it would have to be mailed that night in order to be received in San Francisco by Monday, which was the deadline. He then produced a written contract, which he had prepared the day before, providing that Weller was

to pay him 7½ per cent of any and all relief secured, in addition to the $1,000 retainer, and demanded that Weller sign it. When Weller refused to sign it, Eyman told him that if he did not sign it the protest would not be filed, and he would be liable for the assessment. It had taken Eyman more than a month to prepare the protest and after a couple of hours' discussion Weller signed the contingent fee contract, believing that if he did not do so he would be subject to this assessment which would result in his financial ruin.

Eyman mailed the protests on Sunday, September 17, 1950, and later attended five conferences in connection with this assessment matter, one of which was on February 19, 1951. On February 16, 1951, upon Eyman's insistence that he have some security, Weller assigned the note in question to Eyman for the purpose of securing the payment to him of any money due him for his services in this tax matter. On April 13, 1951, Eyman succeeded in having the claimed assessments reduced to about $2,500.

This action was brought in September, 1951. The court found that the plaintiff had deposited $9,212.79 with the clerk, and that it was entitled to have the note satisfied and to a reconveyance under the trust deed given to secure the note. With respect to the issues between the two cross-complainants, the court found most of the facts above stated and found, among other things, that Eyman had, without any request therefor, advised Weller to file amended returns for 1943 to 1945; that Weller did so upon Eyman's representation that he was experienced and learned in tax matters; that Eyman knew that most of Weller's records had been destroyed by fire, that he would have no adequate records to support his position, and that the filing of the amended returns would start an investigation of Weller's entire account; and that after preliminary discussions Weller and Eyman entered into an agreement on April 14, 1949, by which Eyman agreed to handle the tax matter and Weller agreed to pay him a retainer of $1,000.

In connection with the written contract for a contingent fee it was found that when Weller went to Eyman's office to sign the protests on the afternoon of Saturday, September 16, 1950, he was for the first time confronted with Eyman's demand for a contingent fee; that Eyman then refused to file the protest unless this contract was signed, and stated that a large assessment would be made against Weller unless the protest was filed; that the following Monday was the

last day in which the protest could be filed in San Francisco; that most attorneys' and accountants' offices were then closed; that Eyman had taken considerably more than a month to prepare the protest, and Weller believed that an extension of time could not be secured to permit him to find another accountant or prepare new protests; that Weller was mentally ''in extremis'' and convinced that unless he complied with Eyman's demand a judgment would be taken against him which would destroy him financially; that he signed the contract under this belief and to prevent said assessment; that Weller was taken by surprise and had had no warning of a possible demand for contingent fees prior to that date; that he believed that Eyman would abandon his case if he did not sign the contract; that he would not have signed it if Eyman had not stated that he would not file the protests and that the assessment would be made if he did not sign; that it was impossible at that late hour for Weller to secure the necessary assistance to prepare and file a protest before the deadline; that Eyman told Weller that if he did not sign the contract he would become liable for the total amount of the tax assessments; and that under these circumstances Weller signed the contingent fee agreement under business compulsion and duress.

It was further found that the services performed by Eyman in connection with this matter were performed under the agreement of April 14, 1949, and not under the contingent fee contract signed on September 16, 1950; that the reasonable value of Eyman's services in the matter is $2,700, in addition to the retainer already paid; that the assignment of the note to Eyman on February 16, was not made under duress or business compulsion, but was made to secure the payment of any money to become due Eyman for his services in this matter; that on that date the retainer had been paid, but any further amount to become due to Eyman had not been determined; that on that date Eyman demanded that this note be assigned to him as security for any further sums to become due him for his services; and that Weller assigned said note to him for that purpose.

Judgment was entered providing for the cancellation and return to the plaintiff of the note and security given in connection therewith; for the payment to Eyman of $2,700 (plus some interest and an additional amount not here in question) out of the fund deposited in court; and for the

payment to Weller of the balance remaining in the possession of the clerk. From this judgment Eyman has appealed.

The appellant contends that the findings are not sufficient to support the conclusions and judgment. It is argued that a contract, even if obtained under duress, is merely voidable and subject to the rules governing a rescission; that the respondent was here seeking a rescission and the court failed to find that he rescinded promptly, which finding was essential to a judgment of rescission; that the findings are fatally inconsistent and conflicting since it was found that the contingent fee agreement was obtained under compulsion, but also found that the respondent had voluntarily assigned the note to secure the payment to appellant of any money coming due to him ''under the contingent fee agreement''; and that the findings are deficient in that the court did not specifically find that the respondent acted reasonably in submitting to the alleged compulsion.

While a consent not freely given is not necessarily void and ''may be rescinded'' under the rules prescribed for a rescission (Civ. Code, § 1566) this was not an action for a rescission, the claims of the respective parties being presented in response to the complaint in intervention, and the technical requirements of rescission are not necessarily controlling here. The finding of compulsion in obtaining the contingent fee agreement is not fatally inconsistent with the finding of lack of compulsion in the later assignment of the note, since it was found that the services were performed under the oral agreement of April 14, 1949, and that the note was assigned only for the purpose of securing payment for any further sums due for said services, this amount being then undetermined. There is nothing in the record to indicate that the assignment of the note mentioned the contingent fee agreement, and the court did not find that it was made to secure any payment coming due under that agreement. A finding that the respondent acted reasonably in submitting to duress and compulsion is necessarily implied from the other facts found.

It is further contended that the evidence is insufficient to support the finding of economic duress or compulsion since it does not meet the test that to be sufficient for that purpose the evidence must show some wrongful act, that no other adequate means were available to the other party to prevent the threatened loss, and that the other party acted as a reasonable person in submitting to the alleged coercion. It is

argued that there is no evidentiary support for the finding that these parties made an oral agreement on April 14, 1949, providing that Eyman was to handle this matter and that Weller was to pay him a retainer of $1,000; that there is no evidence of any wrongful act on the part of the appellant, but only of a mere breach of contract which is not sufficient to support a conclusion of illegal compulsion; that there is no evidence that the respondent did not have other adequate means to prevent a threatened loss since he had two days in which to file a protest, and since other proceedings would have been necessary before any judgment against him would have become final; that there is no evidence that the respondent acted as a reasonably prudent person in submitting to the alleged coercion; that there is no evidence that he rescinded promptly; and that the evidence conclusively shows that he affirmed the contingent fee agreement, and waived the right to rescind, by later paying the remainder of the $1,000 retainer and assigning the note to the appellant.

The facts are the best answer to most of these contentions. Both parties testified that an oral agreement was made on April 14, 1949, providing that Eyman would handle this matter and that Weller would pay him $1,000. Weller testified that nothing was said about a contingent fee, and that he thought this $1,000 was to be the full charge. Eyman testified that the $1,000 was specified as a retainer, that there was also an indefinite agreement that he was to be paid somewhere from 10 to 15 per cent of any savings effected, and that about a week later he wrote Weller a letter ''confirming the $1,000 retainer,'' but not mentioning any other terms of the agreement. The court accepted a part only of the testimony of each party, and the evidence supports the finding as to the agreement thus made.

There is ample evidence of a wrongful act on the part of the appellant, and something more than a mere passive threat to breach a previous oral contract. Eyman not only refused to complete his service under the original contract, which would have required his attendance at future hearings on the protest, but he refused to allow Weller to file the protest already prepared and used the impossible position thus created to enforce his demand, and thereby secure a new contract on different terms. A very real compulsion appears, which is no less real because an incidental breach of contract was also involved.

The evidence supports the conclusion that other adequate

means to prevent the threatened loss were not available to Weller. He had only two days before the protest must be filed in San Francisco, although Eyman had obtained an extension on the ground that eight days was not sufficient and had then taken about 40 days to prepare it. It was Saturday afternoon, and other assistance would naturally not be available. A failure to file the protest on time would have seriously affected the later proceedings, and in addition to other considerations, it cannot reasonably be said that any means which might become available in the course of subsequent proceedings, were adequate or would have appeared so to a reasonable person.

The evidence rather conclusively shows that Weller did not act freely and voluntarily, and appellant's contention that the trial judge erroneously applied the subjective test as to what Weller believed, rather than the objective test as to what a reasonably prudent person would have believed, is without merit. Whether he acted as a reasonably prudent person was a factual question for the court, and the evidence amply supports the implied finding that he did, which is sufficiently disclosed by the facts specifically found including the finding that the contingent fee contract was signed under duress. (*Young* v. *Hoagland,* 212 Cal. 426 [298 P. 996, 75 A.L.R. 654]; *Steffen* v. *Refrigeration Discount Corp.,* 91 Cal. App.2d 494 [205 P.2d 727].) This was not a case where Weller acted on his own suggestion. (See *Campbell* v. *Rainey,* 127 Cal.App. 747 [16 P.2d 810].) Eyman told Weller that he would be liable for the proposed assessment if he did not sign the agreement, and any reasonably prudent layman would naturally rely on such statements by a tax expert in such a situation. The findings as a whole indicate an intention to find that Weller was justified in believing the statements made, and sufficiently disclose an implied finding, which necessarily and logically follows from the other facts established, that Weller acted as a reasonably prudent person in yielding to this coercion.

It does not necessarily follow that the respondent is barred from any relief because he did not rescind promptly, or because a waiver of his rights conclusively appears. This was not an action for a rescission, and the respondent could not restore what he had received, as required by section 1691 of the Civil Code. His position was similar to that involved in the recognized rule that where a party is placed in a position where rescission would not afford an adequate

remedy, he may complete the contract without waiving his right to assert his claim for the fraud. (*Rothstein* v. *Janss Inv. Corp.*, 45 Cal.App.2d 64 [113 P.2d 465]; *Hines* v. *Brode,* 168 Cal. 507 [143 P. 729]; *Bagdasarian* v. *Gragnon,* 31 Cal. 2d 744 [192 P.2d 935].) No issues of affirmance and waiver were directly raised by the pleadings, although they were incidentally involved in the trial. Both parties came into court as a result of the complaint in intervention, both claiming the funds deposited by the plaintiff. This was only a few months after appellant's services were completed, no prior legal step to enforce the alleged contract had been taken, no prejudice appears from the delay, and no such issue was raised by his answer and cross-complaint. The note was assigned as security for whatever amount the respondent actually owed, and it was not given, specifically or otherwise, as security for the payments called for by the contract of September 16, and the court did not so find. Under the facts proved and found, it cannot be held, as a matter of law, that Weller waived his right to defend against Eyman's claim to a percentage fee. In view of the manner in which Eyman secured the contract for a contingent fee, we are not impressed by his argument that the equities of the case are in his favor.

Because the evidence was conflicting, and because they could not be controlling, several other points incidentally raised by the appellant need not be considered.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 12, 1954, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1954.