In re CONSOLIDATED PRETRIAL PROCEEDINGS IN AIR WEST SECURITIES LITIGATION.

Patricia Scott ANDERSON et al., Plaintiffs,

v.

AIR WEST INCORPORATED et al., Defendants.

Dorothy BEECHER et al., Plaintiffs,

v.

William Rice LUMMIS et al., Defendants.

MDL No. 177 AJZ and Nos. C–73–0529 AJZ and C–74–2475 AJZ.

United States District Court, N. D. California.

Sept. 6, 1977.

■■■■■■■■■■■■■■■

MEMORANDUM OPINION AND FIND-
INGS OF FACT RE DEFAULT

ZIRPOLI, District Judge.

*Background*

The instant motion arises out of two of several securities cases consolidated before this court for pretrial discovery by the Judicial Panel on Multidistrict Litigation. Most of the cases so consolidated have also now

been consolidated for trial before this court.[1]

Among the pleadings filed in the two cases at issue, C–73–0529 AJZ, *Anderson, et al. v. Air West Incorporated, et al.*, (hereinafter also *"Anderson"*) and C–74–2475 AJZ, *Beecher, et al. v. Hughes, et al.*, (hereinafter also *"Beecher"*) are the cross-claims of United States Trust Company of New York and M. W. Odom as Trustees (hereinafter "Trustees")[2] against Summa Corporation, Hughes Air Corp., Howard R. Hughes and Chester C. Davis. The fifth cause of action in each of the cross-claims, which cause of action is directed against Summa

Corporation and Hughes Air Corp. (hereinafter also "defendants" or "Hughes defendants") is the subject of the instant motion. The fifth cause of action in each of the two cases cited above (which cause of action will be referred to in the singular even though it has been pleaded in two distinct actions) alleges, in essence, that Summa Corporation (hereinafter "Summa") and Hughes Air Corp. (hereinafter "Hughes Air") breached a contract by which the property and assets of Air West Incorporated (hereinafter "Air West") were to be sold to Hughes Air.[3]

On November 27, 1974, upon the motion of the Trustees, this court made findings of

---

1. The initial order of the Judicial Panel on Multidistrict Litigation concerning this litigation was dated November 12, 1974. Thereafter, by further orders of this court and the Judicial Panel on Multidistrict Litigation, various actions not included in the initial order of the Judicial Panel on Multidistrict Litigation were consolidated for pretrial purposes before this court. Most recently, by order of the court dated May 31, 1977, C–74–2763 AJZ, *Beecher, et al. v. Hughes, et al.*, was dismissed without prejudice. In addition, by order of the court dated May 31, 1977, the following cases were transferred under 28 U.S.C. section 1404(1) to this court: D.Nevada No. CV–LV–74–15 (BRT), *Beecher, et al. v. Hughes, et al.*; E.D.N.Y. No. 75 Civ. 823, *Kurtz, et al. v. Hughes, et al.*; D.Ariz. No. C–74–107 TUC, *Sipiora v. Hughes, et al.* Finally, by order of the court dated May 31, 1977, the actions just listed and the following actions were consolidated before this court for all further pretrial and trial proceedings: C–73–0529 AJZ, *Anderson, et al. v. Air West Incorporated, et al.*; C–74–2475 AJZ, *Beecher, et al. v. Lummis, et al.*; C–75–0945 AJZ, *Silverstein, et al. v. Lummis, et al.*; C–75–1681 AJZ, *Lanier, et al. v. Lummis, et al.*; C–74–2444 AJZ, *Sipiora v. Hughes, et al.*

2. Both the *Anderson* action and the *Beecher* action are shareholder actions against Howard R. Hughes, Hughes Air, Summa, the officers and directors of Air West, and the liquidating trustees of Air West, alleging securities act violations, breach of common law duties and fraud in the 1970 acquisition by Hughes Air of Air West. Early in 1972 the Trustees filed an action in California state court, alleging that Howard R. Hughes, Hughes Air and Summa had wrongfully deprived Air West and its shareholders of more than half the agreed purchase price. Thereafter, the Trustees entered the *Anderson* action by cross-claiming against Howard R. Hughes, Hughes Air and Summa and naming certain third-party defendants. Trustees entered the *Beecher* action by cross-

claiming against Howard R. Hughes, Hughes Air, Summa and Chester C. Davis.

3. The Trustees' fifth cause of action, as set forth in the *Anderson* case, is as follows:

FIFTH CAUSE OF ACTION AGAINST CROSS–DEFENDANTS SUMMA AND HUGHES AIR

45. Trustees refer to and incorporate in this cause of action paragraphs 1 through 10 of this cross-complaint and third-party complaint.

46. On or about September 9, 1969, Summa designated Hughes Air as the entity to whom the property and assets of Air West were to be sold.

47. Except as prevented by cross-defendants and third-party defendants, Air West has performed all of the obligations on its part to be performed pursuant to the Purchase Contract and, on April 3, 1970, in the City and County of San Francisco, pursuant to the Purchase Contract, Air West transferred to Hughes Air all of the property and assets of Air West.

48. Under Section 1.2(a) of the Purchase Contract, Summa and Hughes Air were obligated to pay to Air West in exchange for all its property and assets approximately $94,501,000.

49. The net amount paid to and received by Air West in exchange for all its property and assets was approximately $41,398,091, and defendants Summa and Hughes Air have failed and refused to pay any part of the remaining $53,102,909 due and payable to Air West under the terms of the Purchase Contract.

50. By reason of the foregoing, Air West was damaged in the amount of $53,102,909. The damages sought have been modified: Trustees now allege that the amount of damage was $48 million. The fifth cause of action in the *Beecher* case is virtually identical to that in the *Anderson* case.

fact and conclusions of law in connection with the default of Summa, Hughes Air and Howard R. Hughes in the *Anderson* case, C–73–0529 AJZ, which default was based upon the failure of Howard R. Hughes to appear for his deposition in connection with these cases, after having been previously directed by the court to appear. On the same date, the court entered an order imposing sanctions on Summa, Hughes Air and Howard R. Hughes. Thereafter, on January 15, 1975, upon the motion of certain cross-complaint defendants and cross-complainants in the *Anderson* case, C–73–0529 AJZ, the court made findings of fact and conclusions of law in connection with the default of Summa Corp., Hughes Air Corp. and Howard R. Hughes due to the same failure of Howard R. Hughes to appear for his deposition. These findings of fact and conclusions of law were accompanied by an order imposing sanctions [4] against Summa, Hughes Air, and Howard R. Hughes.[5] The January 15, 1975, order of default was certified for interlocutory appeal pursuant to 28 U.S.C. section 1292(b) and was upheld by the Ninth Circuit Court of Appeals. *Anderson v. Air West Incorporated*, 542 F.2d 1090 (9th Cir. 1976). Since the entry of the above-described findings of fact, conclusions of law and orders imposing sanctions, other similar orders of default against defendants have been entered by the court upon motions by various parties to the cases consolidated in this multidistrict litigation. The most recent findings of fact and conclusions of law with regard to the default of Summa, Hughes Air and the estate of Howard R. Hughes, made upon the motion of, inter alia, the Trustees, were signed by the court on September 10, 1976, and were applicable to the following cases: C–73–0529 AJZ, *Anderson, et al. v. Air West Incorporated, et al.*; C–74–2475 AJZ, *Beecher, et al. v. Lummis, et al.*; and C–75–0945 AJZ, *Silverstein, et al. v. Lummis, et al.* Thereafter, by order of the court dated September 23, 1976, in the *Beecher* case, sanctions were imposed in favor of, inter alia, the Trustees, against the estate of Howard R. Hughes, Summa and Hughes Air Corp., which sanctions included, inter alia, the entry of default on the cross-claims filed by the Trustees against Summa, Hughes Air, Howard R. Hughes and the Hughes estate and the striking of the affirmative defenses asserted by Summa, Hughes Air, Howard R. Hughes and the Hughes estate to the cross-claims of the Trustees. The Trustees now seek entry of judgment on the fifth cause of action in their cross-claims as asserted in the *Anderson* case, C–73–0529 AJZ and the *Beecher* case, C–74–2475 AJZ, based upon the orders of default and the entries of sanctions as described above.

*The Applicable Law*

a. *Default*

▮▮▮▮ The following principle is directly applicable to the instant case: a default establishes the well-pleaded allegations of a complaint unless they are incapable of proof or are contrary to facts judicially noticed or

---

4. The specific sanctions imposed were the entry of default against Summa, Hughes Air and Howard R. Hughes on the cross-complaints of the Trustees and the directors of Air West, the dismissal with prejudice of the Summa and Hughes Air cross-claim against the Trustees and the directors of Air West, and the striking with prejudice of all affirmative defenses pleaded by the three cross-defendants.

5. Howard R. Hughes died on or about April 5, 1976. Thereafter, Richard C. Gano, Jr. was duly appointed by a California court of competent jurisdiction as the representative of Hughes' estate in California; Annette Gano Lummis and William R. Lummis were duly appointed by a Texas court of competent juris-diction as the representative of Hughes' estate in Texas; William R. Lummis was duly appointed by a Delaware court of competent jurisdiction as the representative of Hughes' estate in Delaware; and First National Bank of Nevada was duly appointed by a Nevada court of competent jurisdiction as the representative of Hughes' estate in Nevada. These representatives of the estate of Howard R. Hughes have been duly substituted for Hughes in, inter alia, the *Anderson* and *Beecher* actions. Rather than referring to these representatives individually, however, reference will be made throughout this memorandum opinion to the Hughes estate or the estate of Howard R. Hughes.

to uncontroverted material in the file. *Thomson v. Wooster,* 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885); *Harshman v. Knox County,* 122 U.S. 306, 7 S.Ct. 1171, 30 L.Ed. 1152 (1887); *Trans World Airlines, Inc. v. Hughes,* 308 F.Supp. 679 (S.D.N.Y. 1969), *aff'd,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).[6] In addition, the party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered, and attempts by the party against whom a default has been entered to attack the validity of the allegations deemed proven by the default are to be strictly circumscribed. *Thomson v. Wooster, supra* 114 U.S. at 115, 5 S.Ct. 788; *Trans World Airlines, Inc. v. Hughes, supra,* 308 F.Supp. at 683, 449 F.2d at 63–64. This is so because a contrary rule would work to the benefit of the party who has obstructed the adjudication of an alleged wrongdoing by refusing to answer or otherwise defend, a result repugnant to the American system of justice.

■■■ It is clear from the above that, once a default has been entered and entry of judgment pursuant to the default is sought, the function of the trial court is not to weigh conflicting evidence; rather, the court must make the sole determination whether the allegations of the party in whose favor the default has been entered are susceptible of proof. The narrow question before the court, therefore, is whether any of the above-enumerated exceptions to the rule of default are applicable to the case: given conflicting but legitimate evidence on both sides, the court is bound to enter judgment for the party in whose favor the default has been entered.

**6.** The court is mindful of the recent opinion of the Ninth Circuit Court of Appeals in *Geddes v. United Financial Group,* 559 F.2d 557 (9th Cir., 1977), wherein it is noted that the "*general* rule of law is that upon default the factual allegations of the complaint, *except* those relating to the amount of damages, will be taken as true." *Id.,* at 560 (emphasis added). The *Geddes* court, relied upon *Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944), as authority for its description of the general rule of law. In *Pope,* the United States Supreme

### b. Prejudgment Interest

■■■ The fifth cause of action sounds in contract. Therefore, state law governs the award of prejudgment interest thereon. 1A, Pt. 2, *Moore's Federal Practice* § 0.310, at 3403 (2d ed. 1977). Under California law, a litigant is entitled to prejudgment interest (at 7%), as a matter of law when his claim is for a liquidated sum or for a sum which is "capable of being made certain by calculation." Cal.Civ.Code section 3287(a); 1 Witkin, *Summary of California Law,* Contracts §§ 653, 654, at 555–57 (8th ed. 1973). The judgment sought in the instant case would be certain or capable of being made certain by calculation because it is based on an arithmetic formula set out in the purchase contract for the determination of the purchase price of the airline. The contract provides that the purchase price is to be determined by multiplying $22 by the number of shares of common stock.

### The Instant Case

#### a. The Findings Proposed

The Trustees ask the court to make the following findings, based upon the allegations of their fifth cause of action and the defaults entered on the cross-claims in *Anderson* and *Beecher*:

1. On or about December 31, 1968, Air West and Summa entered into a written agreement dated as of November 18, 1968, entitled and referred to herein as the "Purchase Contract," a true copy of which is attached as exhibit 1 to the cross-claims of the Trustees in the *Anderson* and *Beecher* cases.

Court noted that it is an exercise of judicial power "for a court upon default, by taking evidence *when necessary* or by *computation from facts of record,* to fix the amount which plaintiff is lawfully entitled to recover and to give judgment accordingly." *Id.* (emphasis added). Because the findings and judgment regarding damages in the instant case are capable of being computed on the basis of facts of record, the case falls squarely within the rule of law described by *Pope.*

2. Pursuant to the Purchase Contract, Summa agreed to purchase and Air West agreed to sell to Summa or its designee all of the property and assets of Air West, excepting certain items not here relevant, for the consideration set forth in the Purchase Contract.

3. On or about September 9, 1969, Summa designated Hughes Air as the entity to whom the property and assets of Air West were to be sold.

4. Except as prevented by cross-defendants and third-party defendants, Air West has performed all of the obligations on its part to be performed pursuant to the Purchase Contract and, on April 3, 1970, in the City and County of San Francisco, pursuant to the Purchase Contract, Air West transferred to Hughes Air all of the property and assets of Air West.

5. Under section 1.2(a) of the Purchase Contract, Summa and Hughes Air were obligated to pay to Air West in exchange for all its property and assets at least $89,398,091.20.

6. The net amount paid to and received by Air West in exchange for all of its property and assets was $41,398,091.20 and defendants Summa and Hughes Air have failed and refused to pay any part of the remaining $48 million due and payable to Air West under the terms of the Purchase Contract.

7. By reason of the foregoing, Air West was damaged in the amount of $48 million.

█ The findings sought are based upon the allegations in the Trustees' fifth cause of action. Although the representatives of the Hughes Estate, Summa and Hughes Air argue that the Trustees' allegations lack sufficient factual detail to be established by default, the court has already held that the allegations are sufficient under Rule 8 of the Federal Rules of Civil Procedure. July 2, 1975, Reporter's Transcript at 12–13. The court reiterates this view at this time. There are no special rules of pleading for default cases. Indeed, to recognize special pleading rules for default cases would only reward a defaulting party at the expense of the litigant who has carefully followed the federal rules.

Having determined that the allegations of the fifth cause of action are sufficient under Rule 8 of the Federal Rules of Civil Procedure, the court must look to the facts of record that would support the allegations. Although the defendants appear to challenge only proposed finding number 4 and, to some extent, proposed finding number 7, the court will address each of the findings proposed in the discussion that follows.

b. *Analysis*

*Findings Number 1 and 2.* These findings are established by virtue of the court's September 17, 1974, Order Specifying Facts Not In Substantial Controversy in *Anderson.* In addition, these findings correspond to paragraph 1 of the statement of facts not genuinely in issue, filed by Summa and Hughes Air on July 8, 1974, in accordance with the provisions of then Local Rule 118.

*Finding Number 3.* This finding is also established by the court's September 17, 1974, Order Specifying Facts Not In Substantial Controversy. In addition, the finding corresponds to paragraph 27 of the statement of facts not genuinely in issue, filed by Summa and Hughes Air on July 8, 1974.

*Finding Number 4.* That Air West performed the contract at issue in the fifth cause of action by delivering the airline to Hughes Air has been established by the court's September 17, 1974, Order Specifying Facts Not In Substantial Controversy and paragraph 2 of the statement of facts not genuinely in issue, filed by Summa and Hughes Air on July 8, 1974.

The gravamen of the fifth cause of action, and the issue that appears to be the most hotly disputed aspect of proposed finding number 4, is the allegation that Summa and Hughes Air prevented Air West's performance, an allegation pleaded as an excuse of a condition precedent. Section 9.1 of the Purchase Contract between Air West and Summa states that as a condition to the

obligation of Summa to purchase Air West, the airline must have, at closing, a net worth of at least 75 percent of its net worth as of July 31, 1968. The contract provides that the determination of Air West's net worth would be made in the same manner as was used to prepare Air West's balance sheet of July 31, 1968. In order to meet the net worth condition of the Purchase Contract at closing in April 1970, Air West returned to Hughes Air $48 million of the gross purchase price of $89,398,091.20 in a bank account considered to be among the assets of Air West conveyed to Hughes Air. Air West argues that it would prove at trial (particularly if it had the benefit of Howard R. Hughes' testimony) that the only reason that the $48 million refund to Hughes Air was necessary to meet the net worth condition is that, beginning in 1968 and continuing up to the day of closing in 1970, Summa and Hughes Air engaged in a course of conduct calculated to cause Air West to suffer severe operating losses during late 1968, 1969 and early 1970, thereby making it impossible for Air West to meet the net worth condition of the contract by the time of closing.

The allegation that Summa and Hughes Air [7] interfered with Air West's ability to perform the contract of sale by meeting the net worth condition is supported by facts of record which tend to show the following:

1. Only $4.5 million of financial assistance to Air West was provided at a time when Summa knew that it was obligated by the Purchase Contract to provide assistance of approximately $6.7 million, and by structuring the assistance actually provided in such a way that if Summa did not complete the purchase of Air West the airline would face bankruptcy.

2. Summa delayed for at least six months in providing assistance to Air West at a time when Summa knew that Air West was entitled to $1 million of financial assistance under the contract.

3. Summa adopted and implemented a policy of forcing Air West to depend on the sufferance and forbearance of its creditors to finance several million dollars of accounts payable, rather than providing interim financial assistance for Air West sufficient to pay its creditors, thus causing Air West to exist at the sufferance of its creditors and causing Air West's financial condition to worsen during the period between December 31, 1968, when the Purchase Contract was signed, and April 3, 1970, when the transaction closed.

4. Summa refused to close the acquisition of Air West on the basis of CAB orders 69–7–102 and 69–7–103, which orders approved the acquisition, and refused to set a closing date as requested by Air West under those orders; and Summa refused to close the acquisition within 60 days of a final CAB order, as required by the Purchase Contract.

5. Summa interfered with and prevented Air West's efforts to obtain additional financing or otherwise to restructure its capitalization, including Air West's efforts to obtain substantial amounts of cash through a securities offering.

6. Summa and Hughes Air refused to close the purchase transaction on the basis of a determination of Air West's net worth made in accordance with the method required by the Purchase Contract and instead closed the transaction only after Air West made certain adjustments to its books (which adjustments were not required by the Purchase Contract) to restate assets and liabilities in such a way that its net worth was reduced by several million dollars.

7. Summa caused the public dissemination of substantial amounts of disparaging publicity about Air West, including publicity that cast doubt on the safety of Air West, thereby affecting adversely Air West's ability to attract business from the traveling public and causing Air West to lose passenger revenue.

7. The initial negotiations for sale of Air West were undertaken by representatives of Summa and Air West. Before the sale closed, however, Summa exercised its purported right to complete the transaction through another entity (Hughes Air) pursuant to section 14 of the Purchase Contract.

As previously noted, defendants cannot escape the consequences of the orders of default heretofore entered against them by arguing that the basic facts just recited, which facts are supportable by the record, may be subject to contrary inferences or may be disputed at trial by other plausible but not uncontroverted facts. Yet this, in part, is what defendants try to do. Summa and Hughes Air argue that the Trustees are entitled to judgment on the fifth cause of action only if the unchallenged facts of record show a breach of contract. That assertion, however, misstates the standard to be applied in default cases. As discussed above, defendants, by virtue of the defaults entered against them, have admitted the well-pleaded allegations of the complaint; accordingly, Trustees are entitled to the benefits of those allegations, just as if they had been proved on the merits, unless Summa and Hughes Air show that they are contrary to uncontroverted material in the file of the case. To be considered uncontroverted, the material on which Summa and Hughes Air rely must be of a character which "could not possibly be rebutted if the non-defaulting party were permitted a trial." *Trans World Airlines, Inc. v. Hughes, supra,* 449 F.2d at 63. If the evidence offered by the defaulted party merely tends to show that an allegation is not true, then the allegation must be taken as true. *Id.* Defendants' efforts to show that the basic facts asserted by Trustees in support of their proposed finding number 4 are contrary to undisputed evidence of record founder in one critical respect: the evidence upon which defendants rely is, in fact, disputed evidence that could be rebutted at trial. This is not to say that none of the evidence upon which defendants rely is true or that a trier of fact would not find it to be true; it is to say, however, that the disputed evidence offered by defendants is insufficient, as a matter of law, to protect defendants from the consequences of the defaults entered against them.

Some of the facts upon which defendants rely raise questions of law, however, and these issues are worthy of further discussion. First, defendants would challenge finding number 4 on the ground that since section 1.2(a) of the Purchase Contract defined the buyer's obligation as being simply payment of $89,398,091.20 in cash or by certified or official bank check, and since there is no dispute that Air West in fact received such payment and accepted it as payment in full, Trustees have no right of recovery. This argument is misleading only because of what it omits to observe: Summa and Hughes Air had an unconditional obligation under the Purchase Contract to pay $89,398,091.20 but, by the allegations of the fifth cause of action, Summa and Hughes Air made an offer of performance that was not unconditional. Hence, delivery of a check, allegedly conditioned by activities amounting to economic coercion, does not operate as a discharge of the obligation. *See, e. g.,* Cal.Civ.Code section 1494; also see, e. g., *Paramount Properties Co. v. Transamerica Title Insurance Co.,* 1 Cal.3d 562, 569, 83 Cal.Rptr. 394, 463 P.2d 746 (1970); *Aircraft Associates & Manufacturing Co., Inc. v. United States,* 357 F.2d 373 (Ct.Cl.1966).

Defendants also claim that recovery cannot lie under the fifth cause of action because that cause of action does not plead the elements of a claim of restitution based on duress. This argument misconceives the role of coercion in the Trustees' fifth cause. The fifth cause of action is not a claim to recover money paid under duress; rather, it is a claim to recover the balance due under the Purchase Contract. The allegation that Summa and Hughes Air prevented Air West's performance is pleaded as an excuse of a condition precedent. *See, e. g.,* Cal.Civ.Code §§ 1511, 1512. That the same actions upon which Trustees rely to defeat Summa's claim of performance—coercion on the closing—would also support a claim for restitution, in no way affects Trustees' claim for breach of contract. 52 Am.Jur. 380; Restatement, Contracts, §§ 381, 384.

Defendants' claim that the events of the closing did not constitute coercion as a matter of law is similarly

unavailing. A claim of coercion is established by a showing that the defendant put plaintiff in a position of financial weakness and then exploited the plaintiff's position by attempting to force plaintiff to relinquish his legal rights. *Leeper v. Beltrami,* 53 Cal.2d 195, 1 Cal.Rptr. 12, 347 P.2d 12 (1959). Moreover, defendants' claim that Trustees should be denied recovery on the fifth cause of action because they had an alternative source of recovery (bankruptcy) has never been held to be an adequate alternative under the law of business compulsion. Indeed, fear of financial ruin is uniformly recognized as a valid reason for submitting to another party's economic coercion. *E. g., Robertson v. Frank Brothers Company,* 132 U.S. 17, 10 S.Ct. 5, 33 L.Ed. 236 (1889); *James Shewan & Sons, Inc. v. United States,* 73 Ct.Cl. 49 (1931); *Litten v. Jonathan Logan, Inc.,* 220 Pa.Super. 274, 286 A.2d 913 (1971); *Thompson Crane & Trucking ·v. Eyman,* 123 Cal. App.2d 904, 267 P.2d 1043 (4th Dist. 1954).

Finally, defendants' claim that Trustees cannot raise a defense of coercion or duress because they delayed too long before "disavowing" Air West's "acquiescence" in defendants' demand for a refund of $48 million must be rejected. That claim was pleaded as an affirmative defense and was stricken by the earlier orders of default. Defendants now attempt to convert this defense into an element of a contract claim which they contend Trustees have failed to satisfy as a matter of law. Defendants' argument notwithstanding, it is clear that the question whether delay in asserting a right amounts to a tacit ratification of an alleged wrong or gives rise to a defense of laches is a question to be answered in light of the circumstances present in each particular case. *Graham v. Atchison, T. & S. F. Ry. Co.,* 176 F.2d 819, 827 (9th Cir. 1949). Promptness in seeking rescission of an act induced by duress is not a prerequisite plaintiff must establish; rather, it is the defendant who must assert that he is prejudiced by plaintiff's unreasonable delay. Cal.Civ.Code section 1693. The existence of prejudice is a question of fact. *E. g., Conti v. Board of Civil Service Com-*

*missioners,* 1 Cal.3d 351, 356–62, 82 Cal. Rptr. 337, 461 P.2d 617 (1969). It is evident from the authorities cited above that the claim of delay urged by Summa and Hughes Air is a claim which depends for its resolution upon disputed issues of fact and one which Summa and Hughes Air are precluded from raising at this time by reason of the sanctions of default and dismissal entered against them. Since prejudice to Summa and Hughes Air does not appear from any uncontroverted facts in the record of this proceeding, their claim of delay must be rejected.

*Finding Number 5.* Trustees have adopted, for purposes of this proceeding, the position of Summa and Hughes Air regarding the contract purchase price of the airline. Accordingly, the phrase "at least $89,389,-901.20" replaces "approximately $94,501,-000" as alleged in the cross-claims.

*Finding Number 6.* Trustees have adopted, for purposes of this proceeding, the position of Summa and Hughes Air regarding the computation of the purchase price of the airline under the Purchase Contract. Accordingly, the number "$41,398,091.20" replaces "approximately "$41,398,091" as alleged in the cross-claims and the number "$48,000,000" replaces "approximately $53,-102,909" as alleged in the cross-claims.

*Finding Number 7.* The number "$48,-000,000" replaces the number "$53,102,909" as alleged in the cross-claims. This change reflects subtraction of the numbers in findings 5 and 6.

Summa and Hughes Air challenge this proposed finding on the ground that the Trustees must prove the extent of the acts of prevention because the difference between full performance and Air West's performance in fact, which may be considered excused by prevention, "does not emerge automatically as a liquidated amount of $48,000,000." They argue that the difference must be identified and measured in order to ascertain damages. As is true of defendants' other claims, this assertion misconceives the fifth cause of action: by their argument regarding damages, de-

fendants would convert the fifth cause of action into a claim for consequential damages measured by acts of prevention rather than a claim for damages measured by contract. The allegation of prevention in the fifth cause of action is relevant only to liability, not to damage. If proved on the merits it, together with the allegation of performance, would establish a right of recovery on the contract for the full purchase price. Indeed, unless the allegation of prevention is shown to be incapable of proof (and Summa and Hughes Air have failed to show that it is) it is established as true by the default and the Trustees ̣ ' to recover on the contract is the same as if the allegation had been proved on the merits. Liability on the contract having been established, the measure of the Trustees' contract recovery is not necessarily the same as the measure of prevention; instead, it is the amount by which the purchase price was reduced.

Summa and Hughes Air also seem to argue that the amount of reduction in the purchase price is not the correct measure of damages on the Trustees' claim. They suggest that if the net worth condition was in fact excused, Trustees' measure of damage must be the purchase price less the amount by which Air West failed to satisfy the net worth condition. This argument, however, is misapplied when used in the context of the instant case. The argument is based upon authorities holding that if prevention of performance results in cost savings to the promisor, his damages are measured by the contract price less the costs saved by not having to perform. This proposition has no meaning in this case, however. First, it makes no sense to argue that by preventing Air West from meeting the net worth condition, the defendants saved Air West certain costs of performance. Since the allegation established by the default is that if Air West's performance of the net worth condition had not been prevented the net worth requirement would have been fulfilled, then it follows that any cost outlay in Air West's performance of the condition would have been met by at least an equal return of capital. In addition, even assuming that Air West was saved certain costs because its performance of the net worth condition was prevented, it follows that the beneficiary of the situation was Hughes Air since it obtained the airline in its entirety, including any money in the bank that would otherwise have been spent in performance.

*Conclusion*

Summa and Hughes Air, faced with default orders of considerable impact upon their claims and defenses in the instant actions, bear a heavy burden; they must demonstrate that the well-pleaded allegations of the Trustees' fifth cause of action either are incapable of proof or are contrary to facts judicially noticed or to uncontroverted material of record. This they have failed to do. Indeed, the sum total of their argument in opposition to the instant motion has consisted of misconceptions of the nature of the fifth cause of action and of the resurrection of certain facts which, though they might have been useful in a trial on the merits, are insufficient when employed to rebut motions for judgment based upon default.

In view of the above observations, and good cause appearing therefor, the court makes the following findings of fact with respect to the fifth cause of action of the cross-claims of the Trustees in C–73–0529 AJZ, *Anderson, et al. v. Air West Incorporated, et al.* and C–74–2475 AJZ, *Beecher, et al. v. Lummis, et al.*:

1. On or about December 31, 1968, Air West Incorporated and Summa Corporation entered into a written agreement dated as of November 18, 1968, entitled and referred to herein as the "Purchase Contract," a true copy of which is. attached as Exhibit 1 to the cross-claims of the Trustees in the *Anderson* and *Beecher* cases.

2. Pursuant to the Purchase Contract, Summa agreed to purchase and Air West agreed to sell to Summa or its designee all of the property and assets of Air West, excepting certain items not here relevant, for the consideration set forth in the Purchase Contract.

3. On or about September 9, 1969, Summa designated Hughes Air as the entity to whom the property and assets of Air West were to be sold.

4. Except as prevented by cross-defendants and third-party defendants, Air West has performed all of the obligations on its part to be performed pursuant to the Purchase Contract and, on April 3, 1970, in the City and County of San Francisco, pursuant to the Purchase Contract, Air West transferred to Hughes Air all of the property and assets of Air West.

5. Under Section 1.2(a) of the Purchase Contract, Summa and Hughes Air were obligated to pay to Air West in exchange for all its property and assets at least $89,398,091.20.

6. The net amount paid to and received by Air West in exchange for all of its property and assets was $41,398,091.20 and defendants Summa and Hughes Air have failed and refused to pay any part of the remaining $48,000,000 due and payable to Air West under the terms of the Purchase Contract.

7. By reason of the foregoing, Air West was damaged in the amount of $48,000,000.

8. Under California law, Trustees are entitled to prejudgment interest.

Trustees are directed to submit to the court no later than October 21, 1977, a proposed form of final judgment, in accordance with the memorandum opinion and findings heretofore entered, which proposed form of judgment shall provide a computation of the interest due, computed in the alternative for each day of October 24, 25, 26, 27 and 28, 1977. Trustees are further directed to submit to the court no later than October 21, 1977, a proposed Rule 54(b) certification, to include such findings as are necessary.