DENTSPLY INTERNATIONAL, INC.,
Tulsa Dental Products, Inc.,
Plaintiffs,

v.

Brett C. BENTON, Defendant.

Civil Action No. 1:CV–97–0115.

United States District Court,
M.D. Pennsylvania.

May 20, 1997.

Alan R. Boynton, Jr., Harvey Freeden-
berg, McNees, Wallace & Nurick, Harris-

burg, PA, for Dentsply International, Inc., Tulsa Dental Products, Inc.

Thomas Hooker, Harrisburg, PA, John C. Dorfman, Stephen H. Eland, Dann, Dorfman Herrell and Skillman, Philadelphia, PA, for Brett C. Benton.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction.

Invoking our diversity jurisdiction, the plaintiffs, Dentsply International, Inc. and Tulsa Dental Products Inc. (Tulsa), Dentsply's wholly owned subsidiary, filed a complaint against the defendant, Brett C. Benton, a former employee of Tulsa. (We will refer to the plaintiffs collectively as "Dentsply" or the "plaintiff.") Dentsply seeks damages and injunctive relief for breach of an employment contract allegedly consisting of solicitation of Dentsply's customers and use of Dentsply's confidential information.

We are considering the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, which, in the alternative, seeks a transfer to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1631.

The main question raised by Benton's motion is whether he is subject to personal jurisdiction in Pennsylvania by virtue of a forum selection clause in the employment contract. Benton contends that the clause is unenforceable and that he has no other contacts with Pennsylvania that would justify our exercise of jurisdiction over him.

■ While the defendant bears the initial burden to raise the issue of personal jurisdiction, see Clark v. Matsushita Electric Industrial Co., Ltd., 811 F.Supp. 1061, 1064 (M.D.Pa.1993), the burden then shifts to the plaintiff to prove, through the use of sworn affidavits or other competent evidence, that the exercise of jurisdiction is permissible. Id. In light of this standard, we present the following background to the motion.[1]

### II. Background.

In May 1993, old Tulsa hired Benton as a sales manager.[2] (Complaint, ¶ 8; Benton declaration, ¶ 2). He did not execute an employment agreement at that time. (Benton declaration, ¶ 2). In February 1994, Benton was promoted to national sales manager, and in February 1995, he was promoted to director of sales, becoming a nonvoting member of old Tulsa's executive board. (Complaint, ¶¶ 9, 11 and 12; Benton declaration, ¶ 2).

While he was employed by old Tulsa, Benton lived and worked in Oklahoma and he never visited Pennsylvania on business. Until its acquisition by Dentsply, old Tulsa had offices in Oklahoma and Tennessee, and most of Tulsa's employees still remain in those states although Tulsa opened an office in Pennsylvania after the acquisition. (Benton declaration, ¶ 8).

In January 1996, Dentsply, through its subsidiary, Tulsa Dental Products, Inc., made the acquisition of old Tulsa by acquiring certain assets, including its technology and trade secrets and "the right to continue [old Tulsa's] business" and "to offer employment" to old Tulsa's employees. (Complaint, ¶ 13) (brackets added). Dentsply has its principal place of business in York, Pennsylvania, and is engaged in the nationwide sale of dental products and devices. (Complaint, ¶ 2).

Also in January 1996, Benton signed the employment agreement with Tulsa that contained the covenant not to compete which gave rise to the instant lawsuit. The agreement had a choice-of-law provision, making Pennsylvania law applicable to its construction and enforcement, and a forum selection clause. The latter clause read as follows:

1. Pursuant to Local Rule 7.9, the defendant requests oral argument. We deny that request because the briefs are adequate to dispose of the motion.

2. Tulsa went through several incarnations while Benton worked for it. The plaintiff, Tulsa Dental Products Inc., Dentsply's wholly owned subsidiary, appears to be a shell corporation created to assist in Dentsply's acquisition of Tulsa's business. We will refer to the pre-Dentsply business as "old Tulsa."

Any civil action brought to enforce or interpret the terms of this Agreement may be brought only in the Court of Common Pleas of York county (sic), Pennsylvania or, if the United States District Courts would otherwise have jurisdiction in the United States District Court for the Middle District of Pennsylvania.

(Complaint, exhibit A).

In his declaration, Benton explained the circumstances leading up to the execution of the agreement. In May 1995, around the time Dentsply began its negotiations to acquire old Tulsa, Benton became concerned about his future with the latter when old Tulsa's general manager told him that old Tulsa's sales force would probably be overhauled if the acquisition happened. In Benton's view, "[s]ome change [thus] seemed inevitable because Dentsply had a well-established sales network of at least several hundred employees, while Tulsa maintained a sales network of about 10 to 15 employees." (Benton declaration, ¶ 3) (brackets added).

Ominously, the general manager also refused to tell Benton about a meeting he had had "with Dentsply that outlined changes to be made to [old] Tulsa's sales force." (*Id.*, ¶ 4) (brackets added). Benton's concern about his future with Tulsa "escalated" when the general manager refused to discuss this matter with Benton, the director of sales. (*Id.*,) (brackets added).

Benton executed the agreement at a January 1996 meeting held for all old Tulsa employees, including secretaries and clerical workers, to fill out forms related to administrative changes such as changes in the retirement plan. One of these forms was the employment agreement. Benton alleges:

Tulsa did not explain the terms of the employment agreement. Tulsa simply told the employees to fill out the forms. Although I did not understand the substance of the employment agreement, I filled out the form as Tulsa directed.

(*Id.*, ¶ 5).

In May 1996, Tulsa fired Benton purportedly because he "did not fit in with the scheme of Tulsa's new sales force." (*Id.*,

¶ 6). Benton then worked for Champion Athletic Glove but left because the company had financial problems. In September 1996, Benton became employed with Tycom Dental Products in California, where he now resides.

It is Benton's employment with Tycom that has given rise to this litigation. Dentsply believes it violates the covenant not to compete. On October 11, 1996, Benton filed suit against Dentsply and Tulsa in the United States District Court for the Eastern District of Pennsylvania seeking to void the agreement. (Defendants' opposition brief, exhibit A). On December 5, 1996, Dentsply and Tulsa moved to transfer that action to the Middle District of Pennsylvania. Benton voluntarily dismissed the action without prejudice three days later. (Complaint, ¶¶ 35 and 36).

Thereafter, Dentsply and Tulsa filed their complaint in the instant case.

III. *Discussion.*

In moving to dismiss for lack of personal jurisdiction, Benton argues that he has had no contacts with Pennsylvania that would justify the exercise of jurisdiction over him since he has never lived or worked in Pennsylvania. Further, he argues that the employment agreement's forum selection clause is unenforceable as a product of Dentsply's superior bargaining power, citing the leading modern case in this area, *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and some lower court cases that have refused to enforce forum selection clauses in certain circumstances such as *Yoder v. Heinold Commodities. Inc.*, 630 F.Supp. 756 (E.D.Va.1986); *G.H. Miller & Co. v. Hanes*, 566 F.Supp. 305 (N.D.Ill.1983); *Randolph Engineering Co. v. Fredenhagen Kommandit–Gesellschaft*, 476 F.Supp. 1355 (W.D.Pa.1979).

In opposition, Dentsply argues that personal jurisdiction over Benton is proper for two reasons. First, he has sufficient contacts with Pennsylvania on two grounds: (1) he retained in-state counsel and filed suit in the Eastern District over the very controversy at issue here and; (2) as Tycom's national sales director, he is responsible for

sales in Pennsylvania that have injured Dentsply, a Pennsylvania business. Second, he consented to a Pennsylvania forum when he signed the employment agreement containing the forum selection clause and that clause is valid under *The Bremen* and its progeny.

We do not agree with either part of Dentsply's contacts argument. In support of its claim that Benton's suit in the Eastern District is sufficient for personal jurisdiction, the plaintiff cites only Justice Brennan's opinion concurring in the judgment in *Burnham v. Superior Court of California*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), in which the Justice agreed that a defendant who is in a state voluntarily even on just one occasion can be served with process and subjected to that state's jurisdiction. The plaintiff relies on Justice Brennan's statement that otherwise a party could invoke "the full benefit of the power of the forum State's courts as a plaintiff while retaining immunity from their authority as a defendant." *Id.* at 638, 110 S.Ct. at 2124, 109 L.Ed.2d at 657. Even if we were to accept the reasoning, *Burnham* is distinguishable because Benton is not pressing any litigation in Pennsylvania while simultaneously trying to avoid jurisdiction here. Instead, he withdrew his action.

In the absence of citation to any relevant authority on this issue, we agree with the defendant that the situation is analogous to one where a nonresident defendant enters and then leaves a state without service of process on him. Without any other basis of exerting jurisdiction over him, he cannot be subject to process in that state. Thus, in the instant case, Benton could invoke the legal process of Pennsylvania but then voluntarily dismiss the action. If no jurisdiction was asserted over him while his suit was pending, his decision to abandon the state courts, in the absence of any other basis of jurisdiction, renders him immune from process.

In regard to the second part of Dentsply's contacts analysis, as we noted above, the plaintiff has the burden of establishing jurisdiction by competent evidence. This argument is thus deficient because Dentsply has provided no evidence concerning Tycom's sales in Pennsylvania or Benton's connection

with them. Contentions in a brief are not enough. We therefore turn to the last basis on which personal jurisdiction over Benton is asserted—the forum selection clause.

■ Benton first attacks the clause by attacking the entire agreement as having been induced by Dentsply's superior bargaining position. We reject this argument. A party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract. *Corinthian Media, Inc. v. Yelsey*, 1992 WL 47546 (S.D.N.Y.1992) (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270, 281 n. 14 (1974)). Instead, he must show that the clause itself was the product of fraud or coercion. *Corinthian Media, Inc.* An attack on the contract as a whole is not sufficient. *See also Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir.1992).

■ We also note that, contrary to the plaintiff's suggestion, the validity of the forum selection clause is a matter of federal law, not state law. *See Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir.1995) (enforcement of a forum selection clause is a procedural question, not a substantive one, and thus is governed by federal law, even in a diversity case) (quoting *Jones v. Weibrecht*, 901 F.2d 17 (2d Cir.1990)). The employment agreement's choice-of-law provision does not control this issue. *See Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 6 (3d Cir.1988). In any event, extrapolating from *Churchill Corp. v. Third Century, Inc.*, 396 Pa.Super. 314, 578 A.2d 532 (1990), the conclusion we will reach about the validity of the forum selection clause would be the same under Pennsylvania law.

■ As a matter of federal law, in *The Bremen, supra,* the Supreme Court rejected American cases that held forum selection provisions invalid as contrary to public policy. Since parties to a contract might have very good reasons for including such a clause in their agreement, a forum selection clause is enforceable unless it is "unreasonable under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913, 32 L.E.2d at 520 (internal

quotation marks and footnote omitted). Among other things not relevant to this case, the Court indicated that such factors as "fraud, undue influence or overweening bargaining power," *id.* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 522, would justify refusing to enforce the clause. Consistent with *The Bremen,* the Third Circuit has stated, in part, that a forum selection clause will not be enforced if the resisting party can establish "(1) that it is the result of fraud or overreaching." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 202 (3d Cir.1983).

In light of the legal standard the Supreme Court adopted, *The Bremen* represents, perhaps, the quintessential situation where the clause should be upheld. The forum selection clause in *The Bremen* was part of a contract freely negotiated between two international corporations for the transatlantic tow of an oil rig from Louisiana to Italy. It designated the London Court of Justice as the forum for any dispute. The rig was damaged en route in the Gulf of Mexico, and Zapata Off–Shore Co., the American owner of the rig, resisted enforcement of the clause. The Court upheld it, ruling that it eliminated much uncertainty and inconvenience to the parties by designating beforehand where they would litigate any dispute arising from the agreement.

In the instant case, on the other hand, the defendant maintains that the clause is invalid because Dentsply had superior bargaining power and did not give him a chance to negotiate over the forum selection clause, which was presented to him in a form contract that he did not understand. He argues that he signed the agreement to save his job, and the clause is therefore the product of overreaching by Dentsply that should render it unenforceable. In opposition, the plaintiff basically argues that the cases the defendant cites are distinguishable, that *The Bremen* generally upheld the validity of forum selection clauses, and that Benton's perception that he was in a weak position does not mean that Dentsply overreached in having him sign the contract.

We reject the defendant's reliance on his contention that he did not understand the employment agreement. A party to a contract is obligated to understand it before he signs it. We also reject his contention that the form nature of the agreement and the lack of bargaining over the forum selection clause render the clause invalid. Identical arguments were refused in *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

Resolution of the defendant's motion boils down to his remaining argument, whether Dentsply overreached by having him sign the contract; stated another way, whether the clause should not be enforced because Benton had no other choice but sign the agreement.

For the purpose of resolving that issue, we believe Benton was in an ongoing employment relationship starting with old Tulsa and continuing with Tulsa and Dentsply. Although Dentsply might have viewed him as a new hire, for all practical purposes he was in the same job.

The parties have not cited any cases dealing with a forum selection clause in this employment context. We have been unable to find any federal appellate authority on point. The Ninth Circuit's decision in *Spradlin v. Lear Siegler Management Services Co., Inc.,* 926 F.2d 865 (9th Cir.1991), and the cases cited therein, deal with employment agreements executed while the employee still had a choice to enter into the employment relationship. However, we have located some federal district court cases and one state appellate decision on point. The cases are split.

On the basis of overreaching, three courts have refused to enforce a forum selection clause in an employment agreement and have allowed the plaintiff employees to proceed in their chosen forums rather than in the distant forum agreed to in the contract. In *Jelich v. Warner Brothers, Inc.,* 1996 WL 209973 (S.D.N.Y.), the court did not enforce the clause when the plaintiff employee had been badgered into signing the employment agreement and was also told she had to sign it "as is." While the court also believed that the employee was financially unable to litigate in California, the contractual forum, its

citation to *Scott v. Guardsmark Security,* 874 F.Supp. 117 (D.S.C.1995), indicates that it considered the employer-employee relationship so inherently unequal as to nullify the clause. Similarly, in *Nelson v. Master Lease Corp.,* 759 F.Supp. 1397, 1402 (D.Minn.1991), the court refused to rely on the clause in deciding the defendant's motion to transfer to the contractual forum because of the "disparities in bargaining power" between the plaintiff employee and the defendant employer. In *Eads v. Woodmen of the World Life Insurance Soc.,* 785 P.2d 328, 331 (Okla.App. 1989), the court ruled, in part, that the clause was the result of "unfair bargaining power" when the plaintiff employee averred that he was forced to sign by the threat that he would lose his job.

On the other hand, two district courts have upheld forum selection clauses in similar circumstances. In *Goodman v. Hill–Rom Company, Inc.,* 1996 WL 685840 (M.D.Fla.), the plaintiff employee was relegated to Indiana from Florida pursuant to the forum selection clause in her employment agreement. Rejecting the employee's argument that she had been coerced, the court stated:

> Further, the Court is not persuaded that Plaintiff was coerced because Plaintiff and Defendant did not negotiate the subject clause. Most, if not all, employers require their employees to follow rules, so that business can be conducted in an efficient way. Plaintiff states it was Defendant's choice to merge with Defendant's predecessor in interest, and at that point Defendant requested that Plaintiff sign the Employment Agreement. "It's my way or the highway" is not coercion; some would call it is [sic] "free enterprise." Defendant is not the only possible employer in Plaintiff's line of work. Plaintiff was free to choose other employment which was not subject to the same rules if Plaintiff found Defendant's rules too burdensome. Plaintiff did not do so. The Court concludes there is no compelling reason here to invalidate the forum selection clause. If parties in commercial agreements are not held to those agreements, there would be no certainty or predictability in business transactions.

*Id.* at \*3.

In *Corinthian Media, Inc. v. Yelsey,* 1992 WL 47546 (S.D.N.Y.1992), the court also en-forced the forum selection clause and denied the defendant employees' motion to transfer to their choice of a forum. In response to the defendants' argument that "they only signed the agreements under the threat of losing their jobs," *id.* at \*3, the court stated:

> As defendants themselves acknowledge, however, in order to invalidate a contract on grounds of "economic duress," a party must establish both that the other party put them in a position of economic weakness, and that the other party then exploited that position of weakness. *See In Re Consolidated Pretrial Proceeding in Air West Securities Litigation,* 436 F.Supp. 1281, 1289–90 (N.D.Cal.1977). Nothing in the record indicates that either defendant was then in a position of economic weakness, or that they had no meaningful choice other than signing the agreement. If defendants found the agreements or the forum-selection clause in particular to have been so undesirable, they could have refused to sign the agreements and left Corinthian (whether voluntarily or not) to find another job or start their own competing company, as they eventually did.

*Id.*

■ The analyses of *Goodman* and *Corinthian Media* have force, but, in our view, the freedom to get another job does not alleviate the understandable pressure an employee would feel to preserve the job he already has. Thus, the employer-employee relationship is so inherently unequal that we believe that generally a forum selection clause in an employment agreement should not be enforced.

■ Accordingly, we will not enforce the forum selection clause in the instant case. In doing so, we recognize that Benton does not aver that: (1) Dentsply told him he had to sign the form "or else"; (2) that it threatened him with job loss if he did not sign; or (3) that he needed his job financially. The circumstances of the signing were sufficient to show overreaching. Dentsply conducted a mass signing by all employees and simply directed them to sign the agreement. Dents-

ply's conduct would not have led an employee to believe he could negotiate the agreement.

Although it is not necessary to our decision, we also note that Dentsply, as a nation-wide company, can easily litigate its action in a forum with personal jurisdiction over the defendant. *See Nelson, supra,* 759 F.Supp. at 1402–03.

We will issue an appropriate order.

### ORDER

AND NOW, this 20th day of May, 1997, it is ordered that:

1. The defendant's motion to dismiss (doc. 4) is granted.

2. The plaintiff's motion for a preliminary injunction (doc. no. 5) is dismissed as moot.

3. The defendant's motion to transfer (doc. no. 4) is dismissed as moot.

4. The Clerk of Court shall close this file.