**UNITED RENTALS, INC.**

v.

**Lawrence PRUETT**

**No. 3:03CV1618(JBA).**

United States District Court, D. Connecticut.

Dec. 10, 2003.

Brian C. Roche, Matthew P. Lundy, Pullman & Comley, Bridgeport, CT, for Plaintiff.

Barry J. Waters, Theresa M. Parietti, Murtha Cullina LLP, New Haven, CT, Derek T. Werner, Murtha Cullina LLP, Hartford, CT, for Defendant.

### *Ruling on Defendant's Motion to Dismiss or Transfer* [Doc. # 14]

ARTERTON, District Judge.

Plaintiff United Rentals, Inc. ("United") commenced this suit against Lawrence Pruett ("Pruett"), its former employee, on September 23, 2003, alleging breach of the restrictive covenants in Pruett's Employment Agreement with United. United seeks a temporary restraining order and preliminary injunction against Pruett. The defendant, however, has filed a motion to dismiss under Fed.R.Civ.P. 12(b)(2) and (3) and 28 U.S.C. § 1406 for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer under § 1404(a), on grounds that California is the more convenient venue. These procedural matters must be decided before proceeding with the merits of plaintiff's claim. For the reasons discussed below, defendant's motion is granted in part, and this case will be transferred to the Central District of California.

### I. Background

United Rentals, Inc. is a Delaware Corporation, with headquarters in Connecticut and offices nationwide, which rents and sells industrial and construction equipment. Lawrence Pruett was hired by United as a salesperson in May 2001, and worked in United's San Juan Capistrano, California office. In February 2003, he was promoted to branch manager of the San Juan Capistrano office by United's District Manager Dave Gregg ("Gregg"). Pruett worked as a branch manager for United for six months, before suddenly resigning, going to work for United's competitor, Brookstone Equipment Services, and, according to United, soliciting United's former customers.

Shortly after verbally accepting the branch manager position, Pruett signed a written Employment Agreement ("Agreement"). In an affidavit submitted to this Court, Pruett states that Gregg instructed him to sign the Agreement, and explained that it contained the terms of his salary, retention bonus, and profit-sharing, which he and Gregg had earlier discussed, and that "the rest of the Agreement was standard." Pruett Aff. [Doc. # 17] at ¶ 6. Pruett states that while he reviewed the salary and bonus information that Gregg brought to his attention, he did not read the rest of the Agreement, and he signed the Agreement while Gregg remained

standing in his office. *See id.* Gregg denies, in his affidavit, that he advised Pruett that the employment agreement was "standard," and states that he made Pruett aware that he could review the Agreement on his own or with counsel. *See* Gregg Decl. [Doc. # 20, Ex. A] at ¶ 7.

The Agreement contains restrictive covenants preventing Pruett from working for a competitor, from soliciting United's customers, or from disclosing United's trade secrets. Relevant to Pruett's motion, the Agreement also contains forum selection and choice of law clauses. As Paragraph 9(a) provides:

> The interpretation and enforcement of this Agreement shall be resolved and determined exclusively by the state or federal courts sitting in Fairfield County, Connecticut, and such courts are hereby granted exclusive jurisdiction for such purposes and Employee hereby consents and submits to the personal jurisdiction and venue of such courts.

Agreement [Doc. # 20, Ex. B] at ¶ 9.

Paragraph 12(f) provides that "[t]his Agreement shall in all respects be governed and constructed according to the laws of the State of Connecticut without regard to its conflicts of laws principles." Agreement [Doc. # 20, Ex. B] at ¶ 12.

## II. Discussion

■ As defendant concedes, if valid and enforceable, the Agreement's forum selection clause is dispositive of the issue of personal jurisdiction, for it is well established that parties may consent to a court's personal jurisdiction. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("It is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court ...")(quoting *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)); *United States Trust Co. v. Bohart,* 197 Conn. 34, 39, 495 A.2d 1034 (1985)("Unlike subject matter jurisdiction ... personal jurisdiction may be created through consent or waiver."). Similarly, a valid forum selection clause is dispositive of Pruett's claim of improper venue under Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406. *See Jones v. Weibrecht,* 901 F.2d 17, 18–19 (2d Cir.1990). In contrast, a forum selection clause, even if valid, need not be given dispositive weight in a motion to transfer venue under 28 U.S.C. § 1404(a), and must be considered alongside such factors as the convenience of the parties and the interests of justice. *See Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). With these principles in mind, the Court will first consider whether the forum selection clause in the Agreement is valid, and if so, whether venue should nonetheless be transferred to the Central District of California.

## A. Enforceability of the Forum Selection Clause

The Supreme Court established the framework for determining the validity and enforceability of forum selection clauses in two landmark admiralty cases, *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) and *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), which, under Second Circuit precedent, apply equally in diversity cases. *See Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990). In *Bremen,* the Supreme Court reversed what had been courts' long-standing hostility to forum selection clauses, and concluded that such clauses are presumptively valid and "should control absent a strong showing" that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907. For example, the

clause may be held unenforceable if "enforcement would contravene a strong public policy of the forum in which suit is brought," *id.* at 15, 92 S.Ct. 1907, or if "the contractual forum [is] so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court," *id.* at 18, 92 S.Ct. 1907.

*Bremen* dealt with a freely negotiated contract between two sophisticated business entities, and focused extensively on contract formation issues. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), however, the Supreme Court extended *Bremen* to forum selection clauses in adhesion contracts, such as passenger cruise tickets. Shute sued Carnival Cruise Lines in her home state of Washington for an onboard injury that occurred when its ship was off the coast of Mexico. The contract on her passenger ticket designated Florida as the forum of choice, and Carnival Cruise moved to dismiss the case. The Supreme Court declined to adopt a rule that "a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining," noting the positive policy values served by enforcing such clauses, and concluding that such clauses "may well be permissible," under the *Bremen* test. *Id.* at 593, 111 S.Ct. 1522.

The Court in *Carnival Cruise Lines* noted, however, that the "[r]espondents essentially have conceded that they had notice of the forum-selection provision," *id.* at 590, 111 S.Ct. 1522, and acknowledged that sufficient notice is a prerequisite to a valid forum-selection clause. Accordingly, the Second Circuit has emphasized that the "legal effect of a forum-selection clause depends in the first instance upon whether its existence was reasonably communicated". *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir.1995).

Applying the principles of *Bremen* and *Carnival Cruise Lines*, Pruett contends that the forum selection provision in his Employment Agreement is unenforceable because he lacked notice of its existence, because the clause is unreasonable and because it was the product of United's overreaching.

1. *Notice*

■ In support of his claim of insufficient notice, Pruett states that he signed the Agreement without reading the forum selection clause, and that the forum selection clause makes up just "several words in small typeface tucked away on page six [sic] of the nine-page Agreement that United required him to sign in order to obtain a promotion." *Id.* at 15. Second Circuit precedent is clear, however, that the party challenging the forum selection clause need not have actually read the provision, so long as the "physical characteristics" of the contract "reasonably communicated" the existence of the clause, and "the circumstances surrounding the [signing of the contract] permitted the [defendant] to become meaningfully informed of the contractual terms at stake." *See Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir.2001) (citation and internal quotation marks omitted); *see also Effron*, 67 F.3d at 9. Thus, in *Effron*, the Court found that a passenger cruise ticket on 4″ × 8½″ paper, with the warning "IMPORTANT NOTICE–READ BEFORE ACCEPTING" printed in bold letters on the face of the ticket, provided sufficient notice to the plaintiff, even though the forum selection clause itself was in fine print. Here, the forum selection clause is clearly labeled in the middle of the page with the underlined heading, "Forum Selection and Jurisdiction," and is set apart in a separate numbered paragraph. *See* Agreement [Doc. # 20, Ex. B] at ¶ 9. The language of the clause itself clearly conveys that "courts sitting in Fairfield County, Connecticut"

are chosen to interpret and enforce the Agreement. Since it is reasonable to expect an employee to read each page of an employment contract before signing, the fact that the clause appears on page seven of the contract is not an indication that the clause was less than reasonably communicated.

In *Ward,* the Second Circuit found the forum selection clause on the back of a ferry ticket had not been reasonably communicated, because "the passenger's possession of the ticket is limited to two or three minutes as a result of the carrier's own practices" of selling tickets immediately prior to boarding and then collecting them as passengers board. *See Ward,* 273 F.3d at 525. Pruett's case is distinguishable. Unlike Ward, here there is no allegation that his employer did not allow him to review the contract. While Pruett states, in his affidavit, that he immediately signed the contract while his supervisor was standing at his desk, he does not claim that he was pressured to sign the agreement immediately, without taking time to review the provisions. On this point, Pruett's affidavit is consistent with Gregg's, which states that he made Pruett "aware of his opportunity to review the Agreement on his own or with counsel of his choosing." Gregg Decl. [Doc. # 20, Ex. A] at ¶ 7.[1]

### 2. *Reasonableness of the Forum Selection Clause*

■ Pruett also argues that the forum selection clause is unreasonable because he did not have an opportunity to negotiate the terms of the Agreement, and because the dispute is essentially a local one. He states all relevant parties are in California and all relevant events occurred in California, as he was presented with the Agreement in California, signed the Agreement in California, worked for United in California, solicited customers in California, and is accused of breaching the agreement by working and soliciting business for a competitor in California. Unlike a cruise ship passenger who goes to the ship's base of operations to set out on a cruise, and then sues over an injury that occurs at sea, Pruett is being called upon to defend a suit 3000 miles away from his place of residence and the site of all relevant events. In this way, Pruett's case can be distinguished from *Carnival Cruise Lines,* in which, as the Supreme Court noted, Florida, the chosen forum in the contract, was not a "'remote alien forum,' nor—given the fact that Mrs. Shute's accident occurred off the coast of Mexico—is this dispute an essentially local one inherently more suited to resolution in the State of Washington than in Florida." *Carnival Cruise Lines,* 499 U.S. at 594, 111 S.Ct. 1522.

■ Nonetheless, under Second Circuit precedent, failing a test of minimum contacts or convenience of the parties is not sufficient, in itself, to support a finding of unreasonableness of the forum selection clause. As the Second Circuit has framed the reasonableness standard, "[t]he party

---

1. Pruett also argues that even if he had read the words, he would likely not have understood them because it was unclear which claims were subject to arbitration and which were subject to judicial resolution, and because he would not have understood the significance of the forum selection and choice of law provisions. This argument is unpersuasive, because the clause states in clear language that courts in Connecticut would inter-

pret and enforce the terms of the Agreement. Moreover, while the significance of the distinction between California law and Connecticut law on the substantive provisions on the contract would not be obvious to a non-lawyer, the forum selection provision is distinct from the choice of law provision, and the substantive law applied need not be that of the forum hearing the case.

claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show 'that the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.' " *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 32 (2d Cir.1997) (quoting *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. 1907). In fact, the Second Circuit has clearly stated that "a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel," that "the costs and difficulties of suing [in a foreign country] do not satisfy *The Bremen* [inconvenience] standard." *Id.* at 11, 92 S.Ct. 1907 (citations and internal quotation marks omitted). Here, the expense of the litigation would unquestionably be much higher in Connecticut, but has not been shown to deprive Pruett of his day in court. The considerations of convenience that Pruett has put forward are insufficient for a finding of unreasonableness, and are more appropriately taken into account in consideration of his motion to transfer under 28 U.S.C. § 1404(a).

### 3. *Overreaching*

■ Finally, Pruett argues that United obtained the forum selection clause through overreaching. He cites a series of district court cases invalidating forum selection clauses "by unsophisticated employees at the request of overreaching corporations." *See, e.g. Dentsply International, Inc. v. Benton,* 965 F.Supp. 574 (M.D.Pa. 1997) (concluding that "the employer-employee relationship is so inherently un-

equal that we believe that generally a forum selection clause in an employment agreement should not be enforced."); *Jelcich v. Warner Bros., Inc.,* 1996 WL 209973, *2 (S.D.N.Y. Apr. 30, 1996) (refusing to enforce forum selection clause when employer berated employee and told her to sign contract "as is" or receive no salary increase for four years, employee was not a sophisticated businessperson, and employee stated she had not read forum selection provision and would not have understood what it meant).[2]

■ Overreaching is defined as the "act or an instance of taking unfair commercial advantage of another." *See* Black's Law Dictionary (7th Ed.1999). Thus, while unequal bargaining power of the parties cannot, in itself, support a finding of overreaching under the precedent of *Carnival Cruise Lines,* 499 U.S. at 593, 111 S.Ct. 1522, overreaching may be found if the disparity in bargaining power was used to take unfair advantage of the employee. In both *Dentsply* and *Jelcich,* the district courts found overreaching because the employer gave the employee the employment contract to sign months or years after the employee had already been performing the job, and the courts viewed the employee as having no other choice but to sign the agreement. *See Dentsply,* 965 F.Supp. at 579 ("[T]he freedom to get another job does not alleviate the understandable pressure an employee would feel to preserve the job he already has."); *Jelcich,* 1996 WL 209973, at *2. Pruett's situation is distinguishable, because he was offered the employment contract within a few days of verbally accepting the pro-

**2.** Other employment-related cases cited by Pruett are inapposite for the purpose of determining whether overreaching occurred, because they are pre-*Carnival Cruise Lines* decisions focused on the disparity in bargaining power, *see, e.g. Yoder v. Heinold Commodoties, Inc.,* 630 F.Supp. 756 (E.D.Va.1986), or be-

cause they consider the forum selection clause in the context of a motion to transfer under 28 U.S.C. 1404(a), which, as discussed below, is a different analysis under a different line of precedent, *see, e.g. Marens v. Carabba's Italian Grill, Inc.,* 1999 U.S. Dist. LEXIS, 23232, *6 (D.Md. Nov. 3, 1999).

motion to branch manager, and could have refused the promotion and remained employed if the terms of the contract were not satisfactory to him. As United notes, Gregg did not provide the Agreement to Pruett on a "take it or leave it basis." Pl.'s Mem. L. Opp. Mot. Dis. or Trans. [Doc. #20] at 19. Moreover, given the strong presumption of validity of forum selection clauses under Supreme Court and Second Circuit precedent, even in adhesion contracts, it is inappropriate to establish a *per se* rule against enforcement of forum selection clauses in employment agreements, without a clear demonstration of unfair advantage. Pruett has not set forth facts in this case which would establish overreaching.

Under the precedent of this Circuit, therefore, Pruett received sufficient notice of the forum selection provision, and the provision was not unreasonable or obtained through overreaching. The forum selection clause is enforceable, and, accordingly, Pruett's motion to dismiss on grounds of lack of personal jurisdiction and improper venue is denied.[3]

### B. Transfer of Venue under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." While the *Bremen/Carnival Cruise* line of precedent makes forum selection clauses, if enforceable, dispositive of jurisdictional issues and determinations of improper venue, the Supreme Court has adopted a more flexible approach in the context of a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a). In *Stewart Organization, Inc.*

*v. Ricoh Corporation,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the Supreme Court held that while a forum selection clause should be "a significant factor" in the district court's decision on whether to transfer venue, Section 1404(a) required courts to take into account other, equally important considerations. *Id.* at 29, 108 S.Ct. 2239. As the Court concluded, "Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court must also weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* at 30, 108 S.Ct. 2239; *see also Red Bull Associates v. Best Western International, Inc.,* 862 F.2d 963, 967 (2d Cir. 1988) ("Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'")(quoting *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239).

#### 1. *Convenience of the Parties and Witnesses*

Here, the convenience of the parties and non-party witnesses heavily favors transfer to California. As the moving party, Pruett bears the burden of establishing the basis for a transfer of venue. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978); Wright, Miller and Cooper, 15 Federal Practice and Procedure 383 (1986). Pruett, whose testimony will be required, is a California resident. *See* Pruett Aff. [Doc. #17] at ¶ 18. An affidavit from Frank Cronin, an attorney for Brookstone Equipment & Services, who will represent the defendant in this

---

**3.** Because the Court finds the forum selection clause enforceable, it is not necessary to address whether this Court would have personal jurisdiction in the absence of the forum selection clause.

case if it is transferred to California, further identifies six employees of United Rentals that Pruett intends to call as witnesses, along with eight non-party witnesses, including a former United employee, an employee of Brookstone Equipment, and representatives from each of the companies that United listed in its complaint as having been solicited by Pruett after Pruett left United. *See* Cronin Aff. [Doc. #18] at ¶¶ 4–12. All of these witnesses reside in southern or central California. *See Id.* These witnesses would testify about such matters as the circumstances surrounding the signing of the employment agreement, United's corporate policies and procedures, the responsibilities of branch managers, Brookstone Equipment's hiring of Pruett, and the rental policies and communications of the companies Pruett is accused of soliciting. Much of the relevant documentary evidence, including sales records, advertising information, and customer contact information, is also located in California. *See* Cronin Aff. [Doc. #18] at ¶ 13.

Notably, all of the potential non-party witnesses who have been identified would be outside the subpoena power of this Court. *See* Fed.R.Civ.P. 45(b)(2). Cronin stated in his affidavit that he would likely require subpoenas to secure the testimony of each of the representatives from companies Pruett has been accused of soliciting. *See* Cronin Aff. [Doc. #18] at ¶ 11. This fact powerfully counsels the transfer of this case to a District able to secure the live testimony of these witnesses at trial.

United's arguments that the Court should not give weight to the convenience of these witnesses are not persuasive. United states that the testimony of Dan Autry, the former branch manager of United's San Juan Capistrano office, whom Cronin suggested would testify about the scope and duties of United's business, is not necessary to the litigation because Pruett can obtain the same information from United and its current employees. While there may be other witnesses on this subject matter, Autry's testimony appears to be relevant to the case, and will offer a perspective not provided by current United employees. United also contends that Art Nelson, a Brookstone employee, will offer essentially expert testimony, and argues, without support, that "an expert witness is not entitled to the same deference as a 'non-party' witness." Pl.'s Mem. L. [Doc. #20] at 30. The characterization of Nelson as an expert witness has dubious merit, however, and there is nothing in § 1404(a) that suggests that the convenience of expert witnesses should be given any lesser weight than the convenience of other witnesses. Finally, United challenges the expected testimony from six of United's customers, stating that these witnesses could simply be deposed in California. But deposition testimony is not a substitute for live testimony, if for no other reason than transcripts read into evidence give jurors no opportunity to observe the witness's demeanor, tone of voice, and other cues typically used to assess the witness's credibility. The use of video depositions would also fail as an equivalent for live testimony, both because of the expense involved, and because counsel would be unable to sharpen their questioning at trial based on a considered review of the deposition, or alter the scope of questioning to reflect unanticipated trial developments.

United's argument that transfer of this case to California would shift the burden of inconvenience onto United is not persuasive. Although United does not specify which witnesses it seeks to call, it has relied heavily in its TRO motion on the declaration from Dave Gregg, who is a district manager for United in California, was Pruett's immediate supervisor, and who currently resides in southern California. In addition, proof of United's allega-

tions that Pruett solicited United's customers on behalf of a competitor presumably will require testimony from representatives of these California companies. United also states that its potential witnesses include "members of [United's] Corporate Management and IT Department, all of whom reside in Connecticut." *See* Pl.'s Mem. L. Opp. Mot. Dis. or Trans. [Doc. # 20] at 32. Some of United's witnesses, therefore, may be inconvenienced by transferring venue to California. But the fact remains that this is essentially a local dispute involving one of United's southern California branch offices, local California customers, and a local competitor, Brookstone Equipment, which operates only in California and Nevada, *see* Cronin Aff. [Doc. # 18] at ¶ 10. Moreover, as a large, nationwide company with over a dozen branch offices in southern California, *see* Gregg Decl. [Doc. # 20, Ex. A] at ¶ 2, United is capable of obtaining local counsel with relative ease. Thus, transferring venue to California would not shift the burden of inconvenience onto United. On balance, therefore, the convenience of the witnesses weighs heavily in favor of California.

### 2. *Interests of Justice*

■ It is in the interest of justice for a court with the most familiarity with the applicable state law to hear this case. *See Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)

("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case.") (citation and internal quotation marks omitted). Although the Employment Agreement contains a provision specifying that "[t]his Agreement shall in all respects be governed by and constructed [sic] according to the laws of the State of Connecticut without regard to its conflicts of laws principles," California law should govern this case, for the following reasons.

■ Connecticut follows the Restatement (Second) of Conflict of Laws, § 187 (1988 Rev.) in deciding whether to enforce a choice of law provision in a contract.[4] As the Connecticut Supreme Court has formulated the rule:

> [P]arties to a contract generally are allowed to select the law that will govern their contract, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of the effective choice of law by the parties."

4. United's argument that transfer of venue would deprive United of its bargain for "a designated forum where United could depend on uniform treatment of its employment contracts" is unfounded. *See* Pl.'s Mem. L. Opp. Mot. Dis. or Trans. [Doc. # 20] at 34. A District Court in California would be required to apply the same law and choice of law rules as this Court.

A federal court sitting in diversity must apply the choice of law rules of the forum state. *See Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 365 (2d Cir.2003). The transferee forum is obligated to apply the law

of the transferor court. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (holding that a transferee court must "apply the law of the transferor court, regardless of who initiates the transfer. A transfer under § 1404(a), in other words, does not change the law applicable to a diversity case."). Therefore, the transferee court "must apply the choice-of-law rules of the State from which the case was transferred." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n. 8, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

*Elgar v. Elgar,* 238 Conn. 839, 850, 679 A.2d 937 (1996) (quoting Restatement § 187).

Pruett bases his argument that California law applies on subsection (b) of § 187.[5] He argues that it is a fundamental public policy of California that contracts restricting persons from engaging in lawful trade or business are void, that California has a materially greater interest in the outcome of this litigation than Connecticut, and that California law would apply in the absence of any choice of law provision between the parties.

### a. Public Policy of California

 Resolution of this case will require application of either Connecticut or California's law governing restrictive covenants in employment agreements, and both parties are in agreement that California law conflicts with Connecticut law in this area. California law "generally prohibits covenants not to compete," and California public policy "strongly favors employee mobility". *See Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1461, 125 Cal.Rptr.2d 277 (2002) (citing Business and Professions Code Section 16600; *Application Group, Inc. v. Hunter Group, Inc.,* 61 Cal.App.4th 881, 900, 72 Cal.Rptr.2d 73 (1998)). For example, California refuses to enforce contractual provisions restricting those activities of former employees which "will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets," "because it creates an after-the-fact covenant not to compete restricting employee mobility." *Whyte,* 101 Cal.App.4th at 1446–47, 125 Cal.Rptr.2d 277. In contrast, under Connecticut law, courts consider five factors to determine whether a restrictive covenant in an employment agreement is reasonable: "(1) the length of time the restriction operates; (2) the geographic area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." *See Weiss and Associates v. Wiederlight,* 208 Conn. 525, 529 n. 2, 546 A.2d 216 (1988) (citing *Scott v. General Iron & Welding Co.,* 171 Conn. 132, 137, 368 A.2d 111 (1976)). Connecticut law, therefore, enforces certain employment contracts restricting the mobility of employees and the exercise of free competition. As such, it collides with California's blanket policy against these kinds of restrictive covenants.

 United argues that one of the restrictive covenants it seeks to enforce is not a covenant not to compete, but merely an expression of the duty of loyalty an employee or consultant owes to his employer, and is therefore enforceable under both California and Connecticut law.[6]

---

**5.** United's argument that this Court should enforce the Connecticut choice of law provision in the Employment Agreement is based in large part on subsection (a) of § 187, not subsection (b). Thus, United argues that Connecticut has a substantial relationship to the parties and that the choice of Connecticut law in the Employment Agreement was reasonable, because United's corporate headquarters is in Connecticut; the contract was drafted, in part, in Connecticut; United's corporate management in Connecticut communicated policies and procedures to Pruett; Pruett attended a five day training program in Connecticut; and the servers on which United's computer network is run are located in Connecticut. *See* Pl.'s Rep. Mem. [Doc. # 22] at 7. But as the Connecticut Supreme Court has formulated the rule, a finding that either subsection (a) *or* subsection (b) of § 187 applies would make the contractual choice of law provision unenforceable. Pruett's argument is based on subsection (b), and the Court will thus conduct its analysis under subsection (b).

**6.** There are two contractual provisions that United seeks to enforce in this suit: (1) the provision on the protection of proprietary information, which prevents the employee from

Specifically, United contends that it has exercised its option to have Pruett work as a consultant for six months to assist in the branch office's transition,[7] and that as a consultant, Pruett had an agent's duty of loyalty not to compete with the principal. This assertion is strained. As Pruett states, the only notice United provided about its intention to exercise the consulting option was a letter sent to Pruett's former residence, which he did not receive. United never discussed with Pruett how it expected him to assist with the transition, and, with the exception of a single phone call by a new manager requesting information about a piece of equipment, did not ask Pruett to perform a specific service or assign Pruett any particular task. The Agreement provides that the employment relationship "may be terminated at will by Employee or the Company," Agreement [Doc. # 20, Ex. B] at ¶ 1(a), and Pruett terminated it on August 27, 2003. Thereafter, he has not provided any consulting services to United other than responding to the single phone call from the new manager in the branch office. *See* Pruett Aff. [Doc. # 17] at ¶ 13. To the extent the consulting provision may be construed to unilaterally require that Pruett work as a consultant at the company's demand, it implicates California's policy strongly favoring the right of "every citizen ... to pursue any lawful employment and enterprise of their choice." *Application Group,* 61 Cal.App.4th at 900, 72 Cal.Rptr.2d 73.

This policy is further implicated by United's requested remedy for violation of this clause—an injunction preventing Pruett from pursuing his choice of employment.

Thus, despite United's attempt to style an on-going relationship between United and Pruett giving rise to a duty of loyalty, the Agreement's consulting option, as implemented and as drafted, is a transparent attempt to impose restrictions on post-employment mobility without labeling them as such. The consulting option thus implicates California policy. Because Connecticut is receptive to reasonable restrictions on employees' freedom, while California strongly disfavors any such restriction, the application of Connecticut law in this case would violate a fundamental public policy of California.

b. Materially greater interest

■ Because the impact of this litigation will be felt entirely in California, California also has a materially greater interest in the outcome of this litigation than does Connecticut. "California has [an] interest in protecting its employers and their employees from anticompetitive conduct by out-of-state employers." *Id.* at 901, 72 Cal.Rptr.2d 73. The ultimate decision in this case will affect whether Pruett, a California resident, will be permitted to remain with his California employer, Brookstone Equipment, and whether Brookstone is entitled to retain the employee of its choice. Although Connecticut is the state

---

soliciting United's customers for another employer "during the Employment period and the Consulting period, if any, and for one (1) year thereafter," *see* Agreement [Doc. # 20, Ex. B] at ¶ 5(a); and (2) the restrictive covenant preventing the employee from working for a competitor within a 200 mile radius of the branch office "[d]uring the Employment Period and the Consulting Period, if any." *Id.* at ¶ 6(a). It is only the latter restraint that could arguably implicate an agent's duty of loyalty.

7. The Employment Agreement provides that "[u]pon termination of the Employment Period (by Employee or the Company, with or without cause or advance notice), the Company shall have the option of engaging Employee as a consultant for a period of six (6) months years [sic] (the "Consulting Period")." Agreement [Doc. # 20, Ex. B] at ¶ 3(a). The Agreement provides for the lump sum payment of $35,000 to the consultant, "payable within thirty (30) days after the six-month anniversary of the termination of Employee's employment." *Id.* at ¶ 3(e).

in which United's headquarters is located, it otherwise has little connection to the facts of this litigation, and no strong public policy in favor of keeping this case in Connecticut. On balance, then, it is clear that California's material interest in the outcome of this litigation significantly outweighs Connecticut's interest.

c. Applicable law in the absence of any contractual choice of law provision

■ The final part of Connecticut's conflict of laws test asks which state's law would apply in the absence of an effective choice of law by the parties, under the rule of Section 188 of the Restatement (Second) of Conflict of Laws. Section 188 provides, in relevant part:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

While some parts of Pruett's Employment Agreement were drafted at United' headquarters in Connecticut, the salary, retention bonus, and profit sharing provisions were negotiated entirely in California. Pruett signed the contract in California, performed the contract in California, and allegedly breached it in California. The subject matter of the contract is also located in California, as it covers Pruett's responsibilities as branch manager of United's San Juan Capistrano, California

branch. Although United is headquartered in Connecticut and incorporated in Delaware, the branch office of concern in this case is in California. Because the most significant contacts in this case are in California, Section 188 supports the application of California law. Since California law is appropriate under Connecticut's choice of law principles, the interests of justice favor the transfer of the case to the forum more familiar with that state's law.

United argues that other factors should be taken into account in the interest of justice. In particular, United contends that the interests of justice support keeping this case in this District because transfer will delay adjudication of its application for injunctive relief, and will extend the "ongoing breach [that] is causing United irreparable harm." While the dispatch with which a court may redress United's claimed injury is indeed an important concern, the predicate question that must be decided is whether the Employment Agreement is enforceable. For the reasons stated above, this question is one best decided in a California forum.

3. *Significance of the Forum Selection Clause*

This is a case in which the convenience of the parties and the interests of justice strongly outweigh the contractual choice of Connecticut as the forum, and favor the transfer of venue to California. The forum selection clause, while valid, should not be given overriding weight, particularly since it was drafted solely by United with no input from Pruett to be as advantageous as possible to United's own interests. The clause is of no benefit to defendant, who, unlike a plaintiff cruise ship passenger as in *Carnival Cruise Lines,* is here called upon to defend an essentially local dispute thousands of miles away from the site of all relevant events. Given the lack of mutuality of interest and the one-sided nature

of this Employment Agreement, the parties' contractual choice of forum is outweighed by the powerful convenience and fairness factors suggesting California as the appropriate forum.

### 4. *District Where the Action "Might Have Been Brought"*

 Finally, for a § 1404(a) transfer to be permissible, the transferee court must have jurisdiction to hear the case. Here, United has stated that its principal place of business and corporate headquarters is in Greenwich, Connecticut, and Pruett has affirmed that he is a California resident. *See* Mem. L. Opp. Mot. Dis. or Trans. [Doc. # 20] at 2; Pruett Aff. [Doc. # 17] at ¶ 2. Thus, the Central District of California [8] would have diversity jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper there, for that is where all of the events giving rise to the litigation occurred. Accordingly, under the terms of § 1404(a), this suit "might have been brought" in the Central District of California.

As *Stewart*, 487 U.S. at 29–30, 108 S.Ct. 2239, instructs, Section 1404(a) requires courts to take into account factors other than the parties' contractual choice of forum. Here, a California forum, where this case might have been brought, would serve the convenience of the witnesses and the interests of justice. Under *Stewart*, 487 U.S. at 29–30, 108 S.Ct. 2239, therefore, transfer is appropriate.

### III. Conclusion

For the foregoing reasons, defendant Lawrence Pruett's motion to dismiss or transfer [Doc. # 14] is DENIED as to its request to dismiss the case, and GRANTED as to its request to transfer. It is hereby ORDERED that this case shall be transferred to the Central District of California. The file shall be transmitted to the Clerk of Court of the Central District of California.

IT IS SO ORDERED.

---

8. Pruett has asked for transfer to the Central District of California, and United has expressed no preference as between the Central or Southern Districts of California.