**MacDERMID, INCORPORATED,**
**Plaintiff,**

v.

**RAYMOND SELLE AND COOKSON GROUP PLC, Defendants.**

**Civil No. 3:07cv1566 (JBA).**

United States District Court,
D. Connecticut.

March 4, 2008.

Ann H. Rubin, Carmody & Torrance, Waterbury, CT, Fatima Lahnin, Carmody & Torrance, New Haven, CT, for Plaintiff.

David S. Monastersky, John J. Bogdanski, Howd & Ludorf, Hartford, CT, James R. Oswald, Kyle M. Zambarano, R. Bart Totten, Adler, Pollock & Sheehan, Providence, RI, for Defendants.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION AND RELATED MOTIONS

JANET BOND ARTERTON, District Judge.

Plaintiff MacDermid, Incorporated ("MacDermid") brings this action against Defendants Raymond Selle ("Selle") and Cookson Group plc ("Cookson Group"). In its Amended Verified Complaint [Doc. # 39], MacDermid alleges that Cookson breached its contractual obligations by employing Selle (first count), that Cookson Group intentionally interfered with Mac-Dermid's contractual relations with Selle (second count), that Selle breached his employment agreement with MacDermid (third count), and that Selle misappropriated MacDermid's trade secrets (fourth count). MacDermid also seeks preliminary injunctive relief against Selle and permanent injunctive relief against both defendants. (Am. Compl. at 11.) The parties have also filed various other motions: Defendants have moved to dismiss the case for failure to join an indispensable party, Enthone, Inc. ("Enthone") [Docs. # 17, 26]; Plaintiff has moved to preclude the introduction of or reliance on Brazilian law in the case [Doc. # 72]. The Court held a hearing on Plaintiff's Motion for Preliminary Injunction [Doc. # 4] directed only to Selle, during which MacDermid and Selle offered evidence bearing on whether he should be preliminarily enjoined from breaching the terms of his employment agreements with MacDermid. For the reasons that follow, MacDermid's Motion for Preliminary Injunction is granted in part.

## I. Factual Background

The following is a brief summary of the relevant facts. According to the Amended Verified Complaint, "MacDermid is a specialty chemical company engaged in the

development, manufacture[,] and sale of a broad range of chemical and printing products and processes." (Am.Compl.¶ 35.) Prior to his resignation in 2007, Defendant Raymond Selle had been employed by MacDermid for nearly thirty years. After initially working at MacDermid's headquarters in Connecticut, Selle was later based in Maryland as a salesperson while selling MacDermid's products domestically on the East and West Coasts. Selle relocated to São Paulo on a permanent basis in late 2002, where his last position was MacDermid's sales and marketing manager for South America. There, Selle worked at a Brazilian entity called Anion Chemical, a MacDermid licensee, during an acquisition process by MacDermid which was finalized in 2007. During this time, Selle's work gave him access to and knowledge of considerable confidential and proprietary information about MacDermid's advanced surface finishing business, chemical processes and products, customers' needs, product trials and plans, business strategies, and (to a limited extent) research and development undertakings.

MacDermid's claims against Selle are based on certain contractual commitments contained in agreements Selle signed in 1996 and 2002. On November 24, 1996, he signed an "Employee's Agreement" with MacDermid in which he agreed (1) that he would not disclose MacDermid's trade secrets, (2) that he would not compete with MacDermid's business during the first twelve months after leaving his employment with MacDermid, and (3) that he would not solicit MacDermid's customers. Specifically, the non-disclosure provision of the agreement provides in relevant part:

I recognize that it would be detrimental and damaging to [MacDermid] and its business if any of its Secrets became known to its competitors or customers ... and accordingly, I agree that I will not at any time during the term of my employment with [MacDermid] or at any time after the termination thereof, use for my personal benefit or for the benefit of my subsequent employer any of [MacDermid's] Secrets and will keep confidential and will not divulge or disclose any of the Secrets of [MacDermid] to any other person except authorized personnel of [MacDermid] and such other persons as may be so authorized to receive the same by [MacDermid].

(Employee's Agreement at 2, § 2.) In the next paragraph, the covenant not to compete provides in pertinent part:

I agree that during my employment with [MacDermid] and for the twelve (12) months after the termination of my employment I will not directly or indirectly, on my own account or as an employee, ... engage in any business competitive with that portion of [MacDermid's] business with which I was involved or was exposed to during my employment with it, and it is agreed that this obligation shall not be construed to prevent me, upon termination of my employment with [MacDermid] from accepting any other type of employment and/or engaging in any other type of occupation in which the Secrets of [MacDermid] will not be directly or indirectly involved or at risk.

(*Id.* at 2–3, § 3.) The same paragraph also sets out Selle's non-solicitation obligations:

I also agree that during my employment with [MacDermid] and for the twelve (12) months after the termination of my employment I will not induce or attempt to induce any individual or entity which is then or has within the preceding twelve (12) month period been a customer or supplier of [MacDermid] to reduce such customer's or supplier's purchases from or sales to [MacDermid], by direct advertising or solicitation, or otherwise alter such customer's or supplier's contractual or other relationship with [Mac-

Dermid], or disclose the name and/or requirements of any customer to any other person or persons, natural or corporate, or solicit any of [MacDermid's] employees to leave the employ of [MacDermid].

(*Id.*) Selle testified that he signed the agreement knowing that his failure to do so would result in his loss of employment at MacDermid. Subsequently, for the same reason, Selle signed an "Addendum to Employee's Agreement" dated June 25, 2002, after he had been transferred to São Paulo, in which he agreed to certain additional terms, including:

1. You hereby reaffirm and confirm all of your obligations as set forth in the Employee Agreement....

2. It is agreed that the consideration supporting the Employee Agreement is your present employment and the continuation of such employment hereafter....

3. If is further agreed that as additional consideration in support of the Employee Agreement, [MacDermid] will pay you one (1) week severance pay ... if your employment is terminated by [MacDermid] through no fault of your own.

4. Other than as specifically addended herein, the Employee Agreement remains unaltered and in full force and effect.

(Addendum to Employee's Agreement. at 1.) Although Selle testified he had intended to honor his agreements with MacDermid, he voluntarily resigned his employment with MacDermid on September 10, 2007, and simultaneously commenced employment in Brazil as South American New Business Development Manager with

Enthone, indisputably one of MacDermid's direct competitors.

## II. Defendants' Rule 19 Motions

■ As an initial matter, both Defendants have moved pursuant to Federal Rule of Civil Procedure 19 to dismiss the case for failure to join an indispensable party.[1] Under Rule 19, a party is considered necessary to a litigation if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). Defendants contend that because Selle is currently employed by Enthone, not Cookson Group, that Enthone is an indispensable party to the litigation, and that because Enthone is based in Connecticut, its joinder destroys the diversity of citizenship that is the premise for the Court's subject matter jurisdiction. As a result, defendants argue, the case should be dismissed. MacDermid's response is twofold: (1) the evidence demonstrates that Selle's current employer *is* Cookson Group; and (2) even if Selle does work for Enthone rather than Cookson Group, Enthone is not a necessary party to this litigation and its absence does not mandate dismissal.

The parties vigorously disagree over the proper characterization of the corporate

---

**1.** Although the two defendants filed separate motions to dismiss on this ground, Cookson Group's papers simply incorporated by reference the factual and legal arguments asserted by Selle. Thus, the grounds for dismissal are the same.

structure and identity of Selle's current employer. Without question, he works for Enthone, a corporation based in Connecticut with a presence in Brazil. MacDermid presented evidence showing that Enthone is linked to Cookson Group, a multinational holding company organized under United Kingdom law and headquartered in London, which provides "administrative services" to its "affiliated companies" or "direct subsidiaries," such as Enthone. Complicating the relationship is the presence of an ambiguously-described umbrella entity called Cookson Electronics, which is a name prominently featured on Enthone's marketing materials and Selle's employment paperwork, and of which Enthone is a constituent division. At this stage it is not necessary to get to the bottom of this hierarchical confusion, for the preliminary injunctive relief sought from the Court is targeted only at Selle, not his employer. But for the limited purpose of deciding whether Enthone is an absent party necessary to this litigation under Rule 19, the Court will assume without deciding that Enthone and Cookson Group are in fact distinct entities.

Looking first at Rule 19(a)(1)(A), that provision "is concerned only with those who are already parties." *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 385 (2d Cir.2006). In other words, as applied to this case, Enthone would qualify as a necessary party under Rule 19(a)(1)(A) if the Court "cannot accord complete relief" as to the parties already named in the suit, namely MacDermid, Selle, and Cookson Group. But the defendants apparently are not seeking dismissal on this ground, for nowhere have they shown how MacDermid cannot obtain complete relief in Enthone's absence. The two counts alleged against Selle implicate his obligations alone; the two counts alleged against Cookson Group turn on its contractual obligations to MacDermid and whether it tortiously interfered with the MacDermid–Selle agreements. Thus, there is no basis on which to conclude that complete relief cannot be granted to those parties before the Court.

In the briefing, the defendants focus more specifically on Rule 19(a)(1)(B), arguing that "since Enthone would be unable to protect its interests in federal court [if absent], it would be left with no other recourse but to bring a separate action in another court seeking a determination that it lawfully may employ Selle." (Selle's Mem. in Supp. Mot. Dismiss under F.R.C.P. 19(b) at 6.) But this reasoning misconstrues the principles underlying Rule 19. According to the Second Circuit,

[it] is not enough under Rule [19(a)(1)(B) ] for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule [19(A)(1)(B) ] are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation.

*MasterCard Int'l,* 471 F.3d at 387. In that case, the court held that although the nonparty "may have an interest that would be impaired by the outcome of this litigation, [it] still does not qualify as a necessary party under Rule [19(a)(1)(B) ] because the harm [it] may suffer is not caused by [its] absence from this litigation." *Id.*

The defendants further rely on *Torrington Co. v. Yost,* 139 F.R.D. 91, 93 (D.S.C. 1991) for the proposition that, in a suit brought by a company against its former employee alleging breach of a confidentiality agreement, that employee's current employer is an indispensable party. However, that court found, without elaboration, that the defendant-employee had entered into a contract with his current employer that he would be at risk of breaching, *id.,*

which is inapposite here as Selle is currently an at-will employee with Enthone (Selle's 19(b) Reply at 7). In fact, Selle's "Employee Confidentiality and Non–Solicitation Agreement" and "Employee Patent and Intellectual Property Agreement" with Enthone/Cookson Electronics both contain the following limiting language with respect to his employment status: "This Agreement is not a contract of employment and does not restrict my right or the Company's right to terminate my employment as an at-will employee with or without cause." (Selle's 19(b) Reply, Exs. D, E.) In light of Selle's right to end his current employment at any time—a factor which seems to distinguish the conclusion in *Torrington*—Defendants fail to show how enjoining Selle from breaching his non-compete agreement by working for Enthone could breach any agreement between them or how Enthone would be at any risk of inconsistent obligations if Selle's employment with it were discontinued.[2]

As the Second Circuit has explained, "[t]he key issue" in applying Rule 19 is whether the case implicates "rights and interests under [a contract] to which the [absent entity] is a party." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 48 (2d Cir.1996). Contrary to Defendants' urging, there is nothing in the record on which to conclude that the litigation, proceeding in Enthone's absence, will require a determination of any Enthone contractual rights, nor that Enthone holds any "interest relating to the subject of the action" sufficient to invoke Rule 19. Consequently, Defendants have failed to show that Enthone is a necessary party under the

first step of the Rule 19 analysis, and their motions to dismiss therefore must be denied.

### III. Choice of Law

■ A second preliminary issue is to what extent, if at all, Brazilian law, in contrast to Connecticut law, should apply. In Selle's employment agreement with MacDermid, the parties assented to its provisions being "construed and enforced in accordance with the laws of the State of Connecticut, without regard to conflict of law principles." (Employee's Agreement at 4, § 11.) Selle and MacDermid further agreed in both that agreement and the later-executed addendum (which Selle signed after he took up residence in Brazil) that jurisdiction and venue for enforcement purposes is proper in Connecticut courts. (*Id.;* Addendum at 1, § 1.) The Defendants contend that the Court should apply, at least in part, the law of Brazil, which in their view reflects a fundamental public policy against enforcement of restrictive covenants in employment contracts.[3] According to MacDermid, Connecticut law should govern the present dispute, and it therefore filed a motion in limine asking the Court determine which forum's law should apply and to preclude introduction of Brazilian law.

■ A federal court exercising its diversity jurisdiction must apply the choice-of-law rules of the forum state. *Cap Gemini Ernst & Young v. Nackel,* 346 F.3d 360, 365 (2d Cir.2003). The parties agree that under Connecticut law, assessment of a choice-of-law provision in a contract is guided by § 187 of the Restatement (Sec-

---

**2.** As further evidence of his status, a form signed by Selle on August 22, 2007 entitled "Receipt of Handbook" contains this provision: "I understand and recognize ... that neither this handbook nor the acknowledgment of receipt of the handbook constitutes a contract of employment or promise of contin-

ued employment between Cookson and myself." (Def.'s Ex. 529.)

**3.** Curiously, Selle's employment agreements with Enthone/Cookson Electronics contain substantively similar Connecticut choice-of-law provisions. (*See* Def.'s Exs. 530–31.)

ond) of Conflict of Laws. *See Elgar v. Elgar*, 238 Conn. 839, 679 A.2d 937, 943 (1996). In *Elgar*, the Connecticut Supreme Court quoted the Restatement and held that

> parties to a contract generally are allowed to select the law that will govern their contract, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

*Id.* (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)). The parties focus their arguments on subsection (b), which the Elgar Court explained as follows:

> The second requirement is that the application of the law of the chosen state must not violate a fundamental policy of the state that (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties. Thus, we need consider the relative policy interests *only if* [the foreign state] has a materially greater interest than [the contractually-selected state] in deciding the validity of the [ ] agreement.

*Elgar*, 679 A.2d at 944 (emphasis added). In commentary, the Restatement explains § 178(2) as protecting the principle that a state's laws should not automatically be applied without considering which state's laws would normally govern the dispute,

but also that "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Restatement (Second) of Conflict of Laws § 178 cmt. g (1971).

In their briefing, both parties discuss this Court's decision in *United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220 (D.Conn. 2003), for its application of this *Elgar*/Restatement framework. In that case, however, in addition to the defendant and his employer both being California residents, the operative contract was executed and performed in California, and its subject matter (the operation of one of the plaintiff's branch locations) was also in California. *Id.* at 232–33. On those facts, the Court concluded that "California's material interest ... significantly outweighs Connecticut's interest." *Id.* at 232. By contrast, the balance of interests in this case tips in Connecticut's favor. Selle began his employment with MacDermid at its Connecticut headquarters, he executed the 1996 employment agreement while living elsewhere in the U.S., and he relocated permanently to Brazil and thereafter executed the addendum agreement in 2002. While living in Brazil between 2002 and 2007, although Selle worked at a Brazilian entity, Anion Chemical, he still reported to, regularly communicated with, and received his salary and employment benefits from MacDermid in Connecticut. According to Michael Siegmund, MacDermid's President of the Americas who testified on behalf of MacDermid, Selle explicitly insisted that he remain a MacDermid employee.

Thus, the current record provides insufficient evidence that Brazil's interest in the case is materially greater than Connecticut's.[4] Following *Elgar*, this conclu-

---

4. The fact that Selle's living expenses, bonuses, and incentive commissions were paid by

Anion does not change this conclusion, nor

sion does not "trigger an inquiry into the relative policy interests" of the jurisdictions, and so the parties' discussion of Brazilian labor law, while interesting, is not relevant at this point. *See Elgar*, 679 A.2d at 944 (concluding that Connecticut did not have a materially greater interest than the chosen state even though "the marriage took place in Connecticut, [ ] the decedent was a Connecticut resident, and [ ] his estate is in probate in Connecticut"); *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 351 (2d Cir.1992) (undertaking a similar choice-of-law analysis and concluding that New York's interest "in defining and protecting the property interests of its citizens" was greater than Switzerland's interest in "fair and organized administration of [a] debtor's estate"). There is also insufficient justification for according deference to Brazilian law or policy for some other reason, such as international comity; as Justice Breyer wrote in *Sosa v. Alvarez–Machain*, 542 U.S. 692, 761, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (Breyer, J., concurring), "comity concerns normally do not arise (or at least are mitigated) if the conduct in question takes place in the country that provides the cause of action or if that conduct involves that country's own national." Here, the evidence shows that Selle engaged in a course of communications and meetings in Connecticut—including with his former MacDermid supervisor Terrence Copeland, now his supervisor at Enthone/Cookson Electronics—as he secretly negotiated his new employment with MacDermid's competitor.

MacDermid's Motion in Limine [Doc. # 72] is therefore granted, and the Defendants are precluded from relying on Brazilian law as a basis for denying the preliminary injunctive relief sought by Plaintiff.

## IV. Motion for Preliminary Injunction

### A. Standard for Preliminary Injunctive Relief

District courts are empowered to grant preliminary injunctive relief when the moving party shows "that [it] will suffer irreparable harm absent injunctive relief," and either "(a) that [it] is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir.2005) (quotation marks omitted). When applying this standard, a showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Co.*, 719 F.2d 42, 45 (2d Cir.1983). To establish irreparable harm, a plaintiff must demonstrate an injury that is neither remote nor speculative, but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 974–75 (2d Cir.1989). However, the moving party bears the even higher burden of a "clear or substantial showing" of likelihood of success where, in relevant part, "the injunction sought will alter, rather than maintain, the status quo—i.e., is properly characterized as a 'mandatory' rather than 'prohibitory' injunction." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quotation marks omitted). Under either standard, the Court concludes that MacDermid has met its burden.

does the fact that Selle was issued a Brazilian resident's card and work book, entitling him to certain social benefits under Brazilian law.

## B. Analysis

Contrary to Selle's suggestion (and notwithstanding his citations to non-precedential and unpublished Connecticut Superior Court authority), there is no basis for doubting the validity and enforceability of his 1996 and 2002 employment agreements with MacDermid. First, the Connecticut Supreme Court has long recognized that continued employment may suffice as adequate consideration to support a covenant in an at-will employment relationship. *Dolak v. Sullivan,* 145 Conn. 497, 144 A.2d 312, 316 (1958); *Roessler v. Burwell,* 119 Conn. 289, 176 A. 126, 127 (1934); *see also Sartor v. Town of Manchester,* 312 F.Supp.2d 238, 245 (D.Conn. 2004) (collecting cases). Selle's continued employment with and compensation by MacDermid following the execution of these two agreements suffices to make the obligations contractually binding, particularly as both MacDermid and Selle agree that Selle's employment would have been terminated without the agreements in place. Second, under Connecticut law, post-employment covenants are valid if reasonable under the circumstances. *Robert S. Weiss & Assocs., Inc. v. Wiederlight,* 208 Conn. 525, 546 A.2d 216, 219 n. 2 (1988) (enumerating the factors to consider in assessing reasonableness, namely temporal and geographic scope, fairness, restraint on trade, and the public interest). There has been no showing, nor any real suggestion, that the covenants at issue here are unreasonable. The non-disclosure provision is narrowly written to achieve the intended objective—that is, preservation of MacDermid's valuable trade secrets—and is no broader than similar agreements previously upheld as reasonable. E.g., *id.* at 220–21 (surveying similar cases and finding a two-year covenant reasonable). The covenants not to compete nor solicit are also appropriately limited in scope, terminating after twelve months, and expressly preserve Selle's right to engage in employment which is not "competitive with that portion of [MacDermid's] business with which [he] was involved" and in which MacDermid's trade secrets "will not be directly or indirectly involved or at risk." (Employee's Agreement at 2–3, § 3.)

Selle contends that he has not breached these agreements, claiming that although Enthone is a recognized competitor, its products are not directly competitive with MacDermid's and thus he is not competing with MacDermid's business as contemplated by the covenant. Selle further contends that he has not disclosed anything proprietary of MacDermid's and that he has no knowledge of protected trade secrets in the first place because of his limited access to such information while at MacDermid. His first argument is undercut by the fact that he was working for a MacDermid entity in Brazil for five years before he resigned and joined Enthone. Indeed, the record shows that the same day Selle left MacDermid he immediately "engage[d] in [a] business competitive with that portion of [MacDermid's] business with which [he] was involved or was exposed to during [his] employment with it" (Employee's Agreement at 2–3, § 3), by continuing to work in the finite advanced surface finishing field in Brazil,[5] including having contacts with some of MacDermid's customers and immediate prospects (e.g., Multec and ABN). Although the parties have made much of the relationship between Enthone, Cookson Group, and Cookson Electronics, this issue is ultimately a red herring, for it is clear that Selle's employment, regardless of the corporate title or form of his employer, is one com-

---

5. Selle testified that the advanced surface finishing market in Brazil is approximately $65 million, for which MacDermid and three other large companies primarily compete.

petitive with MacDermid sufficient to implicate the non-compete provision.[6]

Furthermore, the Court heard ample evidence during the multi-day hearing regarding the confidential and proprietary information to which Selle was exposed during his long tenure with MacDermid, including customer lists (obtained by Selle in June 2007 while he was negotiating his new employment with Enthone), partial chemical formulations, product data sheets, customer pricing and sales data, and project development and strategic planning. The testimony established that although Selle was not a high-level executive or engineer, he was in a managerial position and necessarily acquired a depth of this knowledge by way of his substantial exposure to MacDermid's technology and his role in representing MacDermid in its efforts to capture the Brazilian market by development of customer needs and related transfer of MacDermid technology and applications. Under Connecticut law, a protectable "trade secret" is broadly defined as

> information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Conn. Gen.Stat. § 35–51(d); *Lydall, Inc. v. Ruschmeyer,* 282 Conn. 209, 919 A.2d 421, 430–31 (2007). MacDermid has demonstrated that the confidential and proprietary information to which Selle was exposed and which he utilized during his employment there meets this expansive definition. Considering the extent to which MacDermid and Enthone/Cookson Electronics compete for the business of many of the same customers in the same geographic market, there is also a sufficient basis on which to conclude that some of MacDermid's trade secrets are likely at risk. Because injunctive relief is available for both "[a]ctual or threatened misappropriation" of a trade secret, Conn. Gen.Stat. § 35–52(a), the Court finds that MacDermid has proven that it is likely to succeed on the merits of its trade secret claims against Selle at trial.[7]

The other preliminary injunction considerations further support granting the relief MacDermid seeks. Owing to the demonstrated value of preventing public disclosure of the confidential and proprietary information at issue in this case, MacDermid has shown that it likely will suffer irreparable harm absent relief and that the balance of hardships tips in its favor. *See Lampson Lumber Co. v. Caporale,* 140 Conn. 679, 102 A.2d 875, 878 (1954) (presuming irreparable harm); *accord FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61, 63 (2d Cir.1984) ("[T]he loss of trade secrets cannot be measured in money damages."). Consequently, MacDermid has sustained its burden of showing that it is entitled to a preliminary injunction against Selle with respect to the

---

**6.** The Court also notes that Cookson Group, Enthone, and the Cookson Electronics umbrella entity have emphasized their close connection to each other in a variety of areas, including public websites, marketing materials, business cards, and employment contracts.

**7.** MacDermid also briefly referred to Selle's non-solicitation obligations during the preliminary injunction hearing. However, because the legal issues and factual record related to this covenant have not yet been developed by the parties, the Court will not consider this additional basis for relief here.

non-disclosure and non-compete provisions in his employment agreements with MacDermid.[8]

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion in Limine [Doc. # 72] is granted, Defendants' Motions to Dismiss [Docs. # 17, 26] are denied, Plaintiff's Motion for Preliminary Injunction [Doc. # 4] is granted in part,[9] and Plaintiff's Motion for Sanctions [Doc. # 92] is denied without prejudice. The Court therefore ORDERS the following:

1. Raymond Selle is enjoined from being employed by any entity—including Enthone, Inc., Cookson Electronics, and/or Cookson Group plc— engaged in any business competitive with MacDermid's advanced surface finishing business with which Selle was involved during the final three years of his employment with MacDermid in Brazil. This injunction shall remain in effect until the earlier of September 10, 2008 or further order of this Court.

2. Raymond Selle is also enjoined from disclosing, using, or misappropriating any of MacDermid's confidential and/or proprietary information—including customer lists, partial chemical formulations, product data sheets, customer pricing and sales data, and project development and strategic planning—however ac-

quired during his employment with MacDermid.

IT IS SO ORDERED.

---

**8.** Following the hearing, MacDermid moved for sanctions against Selle for his spoliation of evidence [Doc. # 92], seeking to have the Court draw from the suspicious timing of Selle's computer hard drive being wiped clean "an adverse inference with regard to Selle's misappropriation of trade secrets at the preliminary injunction hearing and any subsequent court proceedings." (Pl.'s Mem. Sanctions [Doc. # 92–2] at 2.) In light of the

Court's determination that MacDermid is entitled to relief without relying on such an inference, this motion is denied without prejudice.

**9.** MacDermid's request for a worldwide injunction and for a period of twelve months going forward, to compensate it for the loss of several months' non-competition during the pendency of this lawsuit, are denied.